**E-FILED**
Friday, 05 December, 2014 05:14:31 PM
Clerk, U.S. District Court, ILCD



NOV 25 2014

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

1  George DeClerck

2  Bobbie J. DeClerck

3  976 East 1330 North Road

4  Taylorville, Illinois

5

6  **United States District Court**

7  **600 East Monroe Street, Springfield Illinois**

8

9  George DeClerck

   Bobbie J. DeClerck

10

11  v.

12

    Bank of New York Mellon FKA Bank of New York as

13  Trustee for Certificateholders of CWABS Inc, Asset-

14  Backed Certificates, Series 2007-1;

15  Bank of New York Trust Company;
    Bank of America Home Loans;

16  CWABS Inc.;

17  CWABS Asset Asset Backed Certificates, Series 2007-1;

18  Countrywide Home Loans, Inc.;
    Stan Zotas;

19  Countrywide Securities Corporation;

20  Countrywide Home Loans Servicing LP;

21  Mortgage Electronic Registration Systems, Inc.;
    Tristar Title, LLC;

22  RBS Greenwich Capital;

23  Russell C. Wirbicki ( 61863 I 0);

24  Diana A. Carpintero (6274662);
    Kenneth J. Nannini (3121924);

25  Laurence J. Goldstein (0999318);

26  James A. Meece (6256386);

27  James D. Major (6295217);
    Christopher J. Irk (6300084);

28

**Case no.:** 14-3365

George DeClerck and Bobbie J.
DeClerck's Verified Claims for:

Wrongful foreclosure
Constructive Fraudulent
Misrepresentation
Breach of Contract
Violation of Truth in Lending Act
Violation of RESPA
Violation of FDCPA
Usury
Abuse of Process
Etc.
Etc.
Etc.

Emily S. Kresse (6294405);
Shara Netterstrom;
The Wirbicki Law Group LLC;
Specialized Loan Servicing LLC;
Tristar Title LLC;
CoreLogic;
Swarupa Slee;
John Does 1-100; Jane Does 1-100;
Roes 1-100, inclusive, all are Counter-respondents/defendants.

## Verified Claims

## Background

This matter has arisen due to a sophisticated scheme designed by the defendants and their principal(s)/predecessor(s) so as to constructively defraud the general public and specifically the DeClercks which commenced a couple of months prior to DeClercks applying for a loan from Countrywide Home Loans Inc. ("CHL") and said constructive fraud continues through the present time. Numerous cases against Countrywide has defined the constructive fraudulent misrepresentations, negligence, and outright violations of the laws in connection with the schemes which CHL its successors and insurance companies have completed numerous out of court and in court settlements reaching billions of dollars;  And, this matter has been filed in this court as the state court has failed to protect DeClercks property rights, and Illinois has failed to cognize and rule on the evidence provided, in the form of our expert's audit and affidavit that apparently rebuts and controverts each and every allegation of the defendants prior complaint . The state court ruled on the complaint and did not give us a Trial by Jury on the Issue, which was demanded, but refused, without hearing.

Each of the defendants have conspired together and individually with each the other co-defendants which have resulted in the Defendants having held themselves out to be lenders and promising loans to the public, but never having given any loans. Countrywide, while presenting the purported loan documents actually did a triple "bait and switch" on the DeClercks, which shall be described as follows:  Countrywide, at the time of the incident, was holding itself out as a lender. Countrywide though purporting to lend money, did not lend money, as described in our Expert's deposition entitled "Affidavit of Patrick F. Willliams, ¶7A."

In fact, no loan was ever given or received by DeClercks. See Affidavit of Patrick F. Williams, ¶ 7A (Exh. 2). DeClercks were tricked into having given the only consideration in the transaction, and DeClercks actually were tricked into giving their property up to a bunch of lying, cheating, thieving parties who never loaned a copper penny, making DeClercks at

-1-

1 the time believe that they would received something, but that something did not happen

2 according to the language of the Note. See Affidavit of Patrick F. Williams, ¶ 7A (Exh. 2).

3

4 The triple " *bait and switch* ". Countrywide apparently had DeClercks sign a " *promissory*

5 *note* ". Countrywide took the Note and special deposited the Note in an account at Countrywide.

6 Countrywide then endorsed the Note and did a currency exchange [ 31 C.F.R. 1010.100(dd) ]

7 with the Federal Reserve. Countrywide after performing the currency exchange kept the

8 proceeds and did not disburse the funds prior to or at signing of the Note, as the Note identifies

9 the loan was received prior to signing. See Affidavit of Patrick F. Williams, ¶ 7A (Exh. 2).

10 Countrywide after performing the exchange, kept the proceeds and then sold the Note for

11 additional profit.

12
13

## A. Claiming Parties.

14 1.1    George DeClerck and Bobbie J. DeClerck are counter-claimants in this action.

15
16
17
18
19
20
21
22
23
24
25
26
27
28
1.2    DeClercks' take up housekeeping in Christian county at: 976 E. 1330 North Road,
       Taylorville, Illinois, legally known as PART OF THE SOUTHWEST QUARTER (SW
       1/4) OF THE SOUTHEAST QUARTER (SE 1/4} OF SECTION 30, TOWNSHIP 13
       NORTH, RANGE 2 WEST OF THE THIRD PRINCIPAL MERIDIAN DESCRIBED AS
       FOLLOWS: BEGINNING AT AN IRON PIN ON THE NORTH LINE OF SAID SW 1/4
       OF SE 1/4 LOCATED 503.5 FEET EAST OF THE NORTHEAST CORNER OF SAID
       TRACT MEASURED EAST 495.28 FEET ALONG THE NORTH LINE OF SAID
       TRACT TO AN IRON PIN; THENCE SOUTH 0 DEGREES 00' 20" EAST 1,319.43
       FEET TO AN IRON PIN ON THE SOUTH LINE OF THESE 1/4 OF SAID SECTION
       30; THENCE NORTH 89 DEGREES 57' 08" WEST 495.28 FEET TO AN IRON PIN;
       THENCE NORTH 0 DEGREES 00' 20" WEST 1319.04 FEET TO THE PLACE OF
       BEGINNING. EXCEPT ALL COAL AND MINERAL UNDERLYING SAID LANDS,
       TOGETHER WITH THE RIGHT TO MINE AND REMOVE SAME.

-2-

1    1.3    Claimants are Illinois state Nationals under Title 8, section 1101(a)(21).

2
     1.4    Claimants are not a member of the church and never baptized, nor are we under the Code
3
            of Canon Law and therefore cannot be compelled.
4

5                                    **B. Respondent Parties.**

6
     1.5    Claimants on research information and belief and thereon alleges that Bank of New York
7
            Mellon, Bank of New York, Bank of New York Trust Company ("Bank of NY") as
8
            Trustee for CWABS Inc, Asset-Backed Certificates, Series 2007-1 ("CWABS"), whose
9
            address is: 101 Barclay Street 4W, New York, New York are fictitious entities or
10
            pseudonyms used by certain known and unknown men and women as a mask for doing
11
            illegal business activities, federally and within Illinois, which negatively affects
12
            Claimants in Illinois.
13

14   1.6    Claimants on research information and belief and thereon alleges that CWABS

15          Incorporated, Asset Backed Certificates, series 2007-1 ("CWABS"), whose address is:

16          unknown are fictitious entities or pseudonym used by certain known and unknown men

17          and women as a mask for doing illegal business activities, federally and within Illinois,

18          which negatively affects Claimants in Illinois.

19
     1.7    Russell C. Wirbicki ( 61863 I 0), Diana A. Carpintero (6274662), Kenneth J. Nannini
20
            (3121924), Laurence J. Goldstein (0999318), James A. Meece (6256386), James D.
21
            Major (6295217), Christopher J. Irk (6300084), Emily S. Kresse (6294405), Shara
22
            Netterstrom, Kenneth J. Nannini (3121924), whose addresses are: 33 West Monroe
23
            Stree, 1140, Chicago Illinois are unknown men and women doing illegal business
24
            activities, federally and within Illinois, which negatively affects Claimants in Illinois.
25

26   1.8    The Wirbicki Law Group LLC, whose addresses is: 33 West Monroe Stree, 1140,

27          Chicago Illinois is fictitious entity or pseudonym used by certain known and unknown

28

1    men and women as a mask for doing illegal business activities, federally and within

2    Illinois, which negatively affects Claimants in Illinois.

3

4   1.9  Claimants on research information and belief and thereon alleges that Countrywide Home

5    Loans Inc whose address is: P.O. Box 660694, Dallas Texas, and P.O. Box 10423, Van

6    Nuys, California, and 1600 Golf Road, Rolling Meadows Illinois, and 4500 Park

7    Granada, Calabasas California ("CWHL"), is a fictitious entities or pseudonym used by

8    certain known and unknown men and women as a mask for doing illegal business

9    activities, federally and within Illinois, which negatively affects Claimants in Illinois.

10  1.10  Claimants on research information and belief and thereon alleges that Tristar Title LLC

11    ("TRISTAR"), whose address is: 1919 S HIGHLAND AVE BLDG B 330

12    LOMBARD, IL 60148-7358 and Lincoln Avenue 120, Lincolnwood Illinois is fictitious

13    entities or pseudonym used by certain known and unknown men and women as a mask

14    for doing illegal business activities, federally and within Illinois, which negatively affects

15    Claimants in Illinois.

16

17  1.11  Claimants on research information and belief and thereon alleges that Bank of America

18    Home Loans ("BofAHL"), whose address is P.O. Box 10229, Van Nuys, California and

19    P.O. Box 650070, Dallas Texas is a fictitious entities or pseudonym used by certain

20    known and unknown men and women as a mask for doing illegal business activities,

21    federally and within Illinois, which negatively affects Claimants in Illinois.

22  1.12  Claimants on research information and belief and thereon alleges that Specialized Loan

23    Servicing LLC ("SLS") whose address is: 8742 Lucent Blvd. 300, Highlands Ranch

24    Colorado.

25

26  1.13  Claimants on research information and belief and thereon alleges that CoreLogic ("CL"),

27    whose address is: 450 E. Boundary Street, Chapin, South Carolina is a fictitious entities

28    or pseudonym used by certain known and unknown men and women as a mask for doing

1    illegal business activities, federally and within Illinois, which negatively affects

2    Claimants in Illinois.

1.14 Claimants on research information and belief and thereon alleges that Mortgage
     Electronic Registration Systems ("MERS"), whose address is: 3300 S.W. 34 Avenue 101,
     Ocala Florida is a fictitious entities or pseudonym used by certain known and unknown
     men and women as a mask for doing illegal business activities, federally and within
     Illinois, which negatively affects Claimants in Illinois.

1.15 Swarupa Slee, whose address is: 3300 S.W. 34 Avenue 101, Ocala Florida.

1.16 Vicente Ekachai Ramos, is a California Notary Public whose address is: unknown.

1.17 John Does 1-100, Jane Does 1-100 and Roes 1-100 whose addresses are unknown at the
     present time, are counter-respondents/defendants who are claimed herein in their
     individual, joint, several capacities pursuant the common law of England, and under
     certain United States and Illinois statutes. The true names, addresses and capacities of
     each of the persons identified herein are unknown at the present time and DeClercks
     reserve the right to amend their claims as to identification, capacity, allegation(s) and any
     request for relief when certain persons have been identified and their location, addresses
     have been ascertained.

1.18 Claimants based on information, research and belief, thereon alleges that at all times
     mentioned and relevant, the respondents and each of them:

          (i) are entities of unknown form, unknown origins, doing business in Illinois, and
          in the business of purchasing and otherwise taking assignment of consumer credit
          transactions described in the federal Truth in Lending Act ("TILA") 15 U.S.C.
          1601, et seq., originated by others.

          (ii) respondents and each of them have transacted business and continues to

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit

-5-

1    transact business in Illinois and the several states.

2

3    1.19   Claimants' based on research, information and belief and thereon allege that at all times

4           relevant, were told by the Bank/lender's representative, that all the finance documents

5           were to be produced with the names: GEORGE DECLERCK and BOBBIE DECLERCK

6           and were also instructed that they were to be acknowledged/signed as such by Notary

7           SARAH E. BOYD.

8    1.20   Claimants' George DeClerck and Bobbie DeClerck's valid commercial drivers' licenses,

9           U.S. Passport all indicate the names of GEORGE DECLERK and BOBBIE DECLERCK.

10          All prior and current property recordings in Christian count are in the names of GEORGE

11          DECLERCK and BOBBIE DECLERCK, which are incorrect and said names should be

12          corrected to DeClerck, George and DeClerck, Bobbie.

13

14   1.21   Claimants at the time of the purported transaction challenged the use of the fictitious

15          names of GEORGE DECLERCK and BOBBIE DECLERCK, but under threat from the

16          bank/lender's agent's Notary SARAH E. BOYD: said challenge was to no avail.

17          Therefore, for purposes of these claims, claimants' intend to use the names: DeClerck,

18          George and DeClerck Bobbie, and not the imposed name of GEORGE DECLERCK and

19          BOBBIE DECLERCK, as used in the loan documents constructed by COUNTRYWIDE

20          HOME LOANS, INC. Or its officers', employees, and its third party affiliates, agents or

21          successors.

22   1.22   Claimants based on research, information and belief, believes and thereon alleges that

23          COUNTRYWIDE HOME LOANS and other purported lenders performed some sort of

24          "IDENTITY THEFT" in connection with obtaining credit scores and other data.

25   1.23   Claimants' on research, information and belief and thereon alleges that at all times

26          mentioned herein, each of the respondents sued herein was the Predecessor, Principal,

27          Employee, Agent, Assignee, Successor in Interest of each of the remaining respondents

28

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit

-6-

1    and was at all times acting within the purpose and scope of such agency and/or

2    employment.

3
                                    **C. Jurisdiction and Venue**
4

5    1.24  Claimants' on research, information and belief and thereon alleges that the Jurisdiction of

6          the subject matter is this Chancery Court as the causes of action arose in Christian county

7          Illinois by virtue of an alleged loan and mortgage including inter-temporal transactions

8          associated therewith which concern the Claimants' property which is commonly

9          identified as:  976 E.  1330 North Road, Taylorville, Illinois, legally known as PART OF

10         THE SOUTHWEST QUARTER (SW 1/4) OF THE SOUTHEAST QUARTER (SE 1/4}

11         OF SECTION 30, TOWNSHIP 13 NORTH, RANGE 2 WEST OF THE THIRD

12         PRINCIPAL MERIDIAN DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON

13         PIN ON THE NORTH LINE OF SAID SW 1/4 OF SE 1/4 LOCATED 503.5 FEET

14         EAST OF THE NORTHEAST CORNER OF SAID TRACT MEASURED EAST 495.28

15         FEET ALONG THE NORTH LINE OF SAID TRACT TO AN IRON PIN; THENCE

16         SOUTH 0 DEGREES 00' 20" EAST 1,319.43 FEET TO AN IRON PIN ON THE

17         SOUTH LINE OF THESE 1/4 OF SAID SECTION 30; THENCE NORTH 89

18         DEGREES 57' 08" WEST 495.28 FEET TO AN IRON PIN; THENCE NORTH 0

19         DEGREES 00' 20" WEST 1319.04 FEET TO THE PLACE OF BEGINNING.

20
     1.25  Claimants' on research, information and belief and thereon alleges that this Court has
21
           jurisdiction over Claimants' claims pursuant to Title 18 U.S.C. §1964(c) (person injured
22
           in their business or property by reason of a RICO violation) in accordance with the
23
           decision of the U.S. Supreme Court's decision identified as *Tafflin v. Levitt*, 493 U.S.
24
           455 (1990), the Organized Crime Control Act §18-4-401 (theft by deception); and has
25
           personal jurisdiction over the respondents because respondents have engaged in acts or
26
           omissions within this judicial district causing injury, have engaged in acts or omissions
27
           outside of this judicial district causing injury within the district; have established
28

1    sufficient contacts with this judicial district sufficient to permit the exercise of personal

2    jurisdiction, have committed torts and criminal acts as more particularly described in this

3    claim within this judicial district, or have had continuous and systematic contacts with

4    this forum as a result of business regularly conducted within this judicial district through

5    soliciting loans, servicing loans and brokering loans and dealing loans to residents of this

6    judicial district.

7
8    1.26  Claimants based on research, information and belief, believes and thereon alleges that the

     same pattern of racketeering alleged herein appears in other cases: *Bank of New York*
9
     *Mellon v. Kenneth Todero*, et al, Case No. 10005375 - Florida Seventeenth Judicial
10
     Circuit; *Wells Fargo Bank, N.A. v. Laura Neel*, et al, Case No. 2012CA000417, Florida
11
     Seventh Judicial Circuit; *Wells Fargo Bank v. Dana Lee Utterback*, et al, Case No. 50-
12
     2011-CA-005928, Florida Fifteenth Judicial Circuit; *Federal National Mortgage*
13
     *Association v. Thomas Dowda*, et al, Case No. 2012-CA-3273, Florida Eighth Judicial
14
     Circuit; *JPMorgan Chase Bank, N.A. v. Ellen A. Fisher*, Case No. 502009-CA-026055,
15
     Florida Fifteenth Judicial Circuit; *CitiMortgage v. Steven J. Martins*, et al., Case No.
16
     01-2011-CA-004930, Florida Eighth Judicial Circuit; *Bank of America v. Robert*
17
     *Herriman*, Case No. 12-816-CA, Florida Twentieth Judicial Circuit.
18

19   1.27  Claimants' claims is one "maturing or accruing" in accordance with the federal "injury

20   discovery" method of statute of limitations under RICO, wherein the statute of limitations

21   is "suspended or tolled" until the Claimant knows that he or she has an actionable injury

22   in fact, and then has four years to file suit stating a claim for damages going back as far as

23   ten years from the date of filing the claim for relief. CF. *Rotella v. Wood*, 528 U.s. 549,

24   552-53, 120 S. Ct. 1075, 145 L. Ed 2d 1047 (2000).

25
26   1.28  Claimants based on research, information and belief and thereon alleges that at all times

     relevant hereto, Respondents egregious and ongoing and far reaching fraudulent schemes
27
     for improper use of claimants' identity, fraud in the inducement, fraud in the execution,
28

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit

-8-

1  usury, and breaches of contractual and fiduciary obligations as "Mortgagee" or "Trustee"

2  on the Deed of Trust, "Mortgage Brokers," "Loan Originators," "Loan Seller," "Mortgage

3  Aggregator," "Trustee of Pooled Assets," "Trustee of Officers of Structures investment

4  Vehicle," "Investment Banker," "Trustee of Special Purpose/Issuer of Certificates of

5  'Asset-Backed Certificates," "Seller of Asset-Backed Certificates (shares or bonds),"

6  "Special Servicer," and "Trustee," respectively of certain mortgage loans pooled together

7  in a trust fund. The participants in the securitization scheme described herein have

8  devised business plans to reap billions of dollars in profits at the expense of Claimants'

9  and other investors in certain trust funds.

10
1.29  Claimants' based on research, information and belief and thereon alleges that in addition
11
   to seeking compensatory, consequential and other damages, Claimants' seek declaratory
12
   relief as to what (if any) party, entity or individual or group thereof is the owner of the
13
   special deposited promissory note executed at the time of the loan closing, and whether
14
   the Deed of Trust (Mortgage) secures any obligation of the Claimants', because no loan
15
   was given prior to the signing of the Note and DOT/Mortgage, and Claimants' requires a
16
   mandatory Injunction requiring re-conveyance of the subject property to the Claimants',
17
   or in the alternative, a Final Judgment granting Claimants' Quiet Title in the subject
18
   property, and additionally seeks an order to publish the summons.
19

20                              **D. Nature of the Action.**

21
1.30  Claimants' on research, information and belief and thereon allege that on February 5th
22
   2007, Claimants' were lead to believe that we were entering into a loan contract with
23
   Respondent Countrywide Home Loans, for $292,000.00 plus interest, but actually no loan
24
   was given to Claimants' prior to signing the Note and Deed of Trust/Mortgage **(Williams**
25
   **Affid., Exh. 2, ¶ 7A.).** The affidavit of Patrick F. Williams is a true and correct copy of
26
   the original in our possession, and made reference to as though set forth fully.
27

28

1.31   Claimants' on research, information and belief and thereon allege that immediately after closing the mortgage loan, Claimants' were instructed by respondent CWHL to make all payments at: P.O. Box 660694, Dallas, TX 75266 (Paladin Associates LOAN AUDIT and MORTGAGE-BACKED SECURITY ANALYSIS, updated February 2014 page 17). Paladin Associates LOAN AUDIT and MORTGAGE-BACKED SECURITY ANALYSIS is a true copy of the original in my possession, and is made reference hereto as though set forth fully, and is annexed hereto as **Exhibit 1**.

1.32   Claimants' on research, information and belief and thereon allege that Respondents' and each of them are business entities that are initiating an illegal judicial foreclosure sale proceeding under an alleged power of sale to foreclose contained the an alleged note allegedly secured against the property located at: 976 E. 1330 North Road, Taylorville, Illinois.

1.33   Claimants' in research, information and belief and thereon allege that the said allegedly special deposited note was never executed by Claimants', or if it was executed, has long since been lost or intentionally destroyed, or paid in full, assigned to unknown third parties, or sold by way of "Security Package," such that Respondents' and each of them Countrywide Home Loans, its successors and assigns, including Bank of New York Mellon FKA Bank of New York as Trustee for Certificate-holders of CWABS Inc., Asset-Backed Certificates, Series 2007-1, which are identified herein and in the Paladin Associates LOAN AUDIT and MORTGAGE-BACKED SECURITY ANALYSIS **(Exhibit 1)** and the Affidavit of expert Patrick F. Williams **(Exhibit 2 ¶ 13)** "It is my professional opinion that the Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-1 has not proven standing as the beneficial interest holder of the Note in this proceeding." Bank of New in its previous case against us, violated due process.

1.34   Claimants' on research, information and belief and thereon alleges that we are the

1    assignees of the legal title (allodial in nature) under a United States Land Patent which

2    shall be identified once said information has been ascertained and identified; and the fee

3    simple owner of the property/real estate identified as: 976 E. 1330 North Road,

4    Taylorville, Illinois.

## II. Factual Allegations.

2.1    These claims are brought by Claimants' against:

BANK OF NEW YORK A.K.A. BANK OF NEW YORK MELLON;

BANK OF NEW YORK TRUST COMPANY;

BANK OF AMERICA HOME LOANS;

CWABS INC.;

CWABS ASSET ASSET BACKED CERTIFICATES, SERIES 2007-1;

COUNTRYWIDE HOME LOANS, INC.;

STAN ZOTAS;

COUNTRYWIDE SECURITIES CORPORATION;

COUNTRYWIDE HOME LOANS SERVICING LP;

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;

TRISTAR TITLE, LLC;

RBS GREENWICH CAPITAL;

Russell C. Wirbicki ( 61863 I 0);

Diana A. Carpintero (6274662);

Kenneth J. Nannini (3121924);

Laurence J. Goldstein (0999318);

James A. Meece (6256386);

James D. Major (6295217);

Christopher J. Irk (6300084);

Emily S. Kresse (6294405);

1  Shara Netterstrom;

2  THE WIRBICKI LAW GROUP LLC;

3  SPECIALIZED LOAN SERVICING LLC;

4  TRISTAR TITLE LLC;

5  CORELOGIC;

6  Swarupa Slee;

7  John Does 1-100;

8  Jane Does 1-100;

9  Roes 1-100, and/or their principals, successors, subsidiaries, affiliates, employees, in
10  connection with the purported loan origination, making of notes, mortgage default
11  insurance, purported currency exchanges, special deposits issued, made or acquired where
12  respondents purportedly originated or made, arranged loans, the said note maker, loan
13  originator then purportedly received payoff of the loan prior to placing said note/mortgage
14  into a Real Estate Mortgage Investment Conduit ("REMIC")/Mortgage Backed Security[1]
15  ("MBS"), then placing them on the Market as Default Security Swaps.

16
17  2.2  Claimants' on research, information and belief and thereon alleges that the
18       Defendants and each of them do not have any interest, legal or equitable claim,
19       lien, to title of the subject property.

20  2.3  Claimants on research, information and belief and thereon alleges that said placement
21       into a REMIC / MBS actually voids the purported holders interest in the Note and the
22       promisors' obligation to perform to the obligations defined therein, and voids the
23       purported Security Instrument ("Mortagage/Deed of Trust") that was designed to
24       protect the purported investors, that allegedly fund the note;  When said note was

25

26       [1]Deconstructing the Black Magic of Securitized Trusts: How the Mortgage Backed
27  Securitization Process is hurting the banking industry's ability to foreclose and proving the best
       offense for a foreclosure defense, by Roy d. Oppenhein and Jacquelyn K. Trast-Rahn (Exhibit .
28

1    placed into REMIC/MBS that placement voided the security interest that the obligor
2    gave, and actually discharges any liability, since the holder substituted its interest in
3    the purported note and security in place of gaining moneys from stock market
4    investors, which potentially reaped ten fold what the purported mortgage investment
5    was/is currently reaping, which is nearly 3.5 times the amount of the loan itself.

6
7  2.4  Claimants on research, information and belief and thereon alleges that In this matter,
      the obligation of the note and deed of trust became void, when the note and deed of
8      trust were bifurcated and handed off to unknown third parties who paid the purported
9      loan off in full.
10

11  2.5  Claimant on research, information and belief believes and thereon alleges that the *so-*
12      *called* obligation of the Note and Deed of Trust/Mortgage are according to the
13      language of the Note and/or Deed of Trust void as a matter of law on the basis that
14      no loan was given prior to signing the Note and Deed of Trust; and any payments
15      made under the note **(Williams Amend. Affid., Exh. 2, ¶ 7A )**.

16
17  2.6  Claimant on research, information and belief believe that any payments made under
      the Note was designed for the purpose and intention to receive unjust enrichment, was
18      done without full disclosure and was a constructive gross fraudulent misrepresentation
19      as to the real nature of the transaction: an undisclosed currency exchange with a huge
20      interest rate, up to 300% of the original exchange, which is called usury.
21

22  2.7  Claimant on research, information and belief and thereon alleges that for many years,
23      each of the Respondents have committed debt collection abuses against Claimants'
24      and thousands of their customers who have purportedly defaulted on their accounts.

25
26  2.8  Claimant on research, information and belief and thereon alleges that in respondents
      attempts to collect on these accounts, Respondents have flooded state courts,
27      including Oregon courts, federal courts across the United States, with collection
28

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit
-13-

1    proceedings against their customers seeking to collect on the alleged debts, often

2    times using fabricated/falsified conveyance/assignments, and without ever having

3    produced the non-bifurcated original note, and deed of trust/mortgage, and many

4    without given proper disclosure at the time of origination, through closing, and

5    failing to disclose when in court, executed and submitted improper, incorrect and

6    fraudulent documents/affidavits attesting to debts **(Williams Amend. Affid., Exh.**

7    **2, ¶¶8, 9, 10, 11, 12 and 13).**

8

9    2.9    Claimants' on research, information and belief believe and thereon alleges that

10         these documents supporting summary judgment were executed by now known

11         *ROBO-SIGNERS*. (Williams Amend. Affid., Exh. 2, ¶¶8, 9, 10, 11, 12 and 13).

12
13   2.10   Claimants' on research, information and belief and thereon alleges that these

14         affidavits were notarized *en masse* by notaries who did not witness the execution of
     
15         the documents. Each of the respondents' business model and practices did not ensure

16         that the affidavits attesting to the mortgagor's debt were accurate, were executed by

17         an individual who had personally examined the records concerning each mortgagor's

18         alleged debt, and were properly notarized. (Williams Amend. Affid., Exh. 2, ¶¶8, 9,

19         10, 11, 12 and 13).

20   2.11   Claimants' on research, information and belief and thereon alleges that each of the

21         respondents have been successful in obtaining default judgments due to this large-

22         scale pattern and practice of fraud and abuse of the legal process. Respondents, and

23         each of them individually or collectively engaged in systematic fraud and made a

24         mockery of our legal system.

25
26   2.12   Claimants on research, information and belief and thereon alleges that the

27         mortgage foreclosure industry is massive, with aggregate transactions totaling

28         trillions of dollars. As is the case in all forms of lending, borrower defaults are

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit

-14-

1    an inherent aspect of the mortgage business.

2.13  Claimants on research, information and belief and thereon alleges that in its
      Examination Procedures for the debt collection industry, the CFPB observed: A
      variety of entities, including originating creditors, third party collectors, debt buyers,
      and collection attorneys, engage in debt collection. Originating creditors may attempt
      to obtain payment from the consumer, typically by sending letters and making
      telephone calls to convince the consumer to pay. Originating creditors also may out
      source the collection of debt to third-party collection agencies or attorneys, or
      sell the debt to debt buyers after an account has been delinquent for a period of
      time. Third party collection agencies collect debt on behalf of originating creditors
      or other debt owners, often on a contingency fee basis. Debt buyers purchase debt,
      either from the originating creditor or from another debt buyer, usually for a fraction
      of the balance owed. Debt buyers sometimes use third-party collection agencies
      or collection attorneys to collect their debt, but may also undertake their own
      collection efforts. Debt buyers also may decide to sell purchased debt to another
      debt buyer.

2.14  CFPB Examination Procedures; Debt Collection (*Examination Procedures*), annexed
      hereto as **Exhibit 4**.

2.15  Claimant on research, information and belief and thereon alleges that Debt collectors,
      regardless of whether they are internal to the originating financial institutions, bank-
      owned entities, or third-parties, utilize a variety of mechanisms to collect on
      defaulted accounts.  These collection practices include calling or sending mail
      solicitations to borrowers in an effort to persuade them to make payments: see
      **Exhibit 4.**

2.16  Claimant on research, information and belief and thereon alleges that in 2006 and

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit

1   2007, as the housing crisis began to unfold, banks began to realize an increase in the

2   rate of default on mortgage accounts. Furthermore, traditional debt collection methods

3   on these default accounts became less effective. Together, these extrinsic factors

4   caused the issuing banks and debt collectors to reexamine their collection strategies.

5   As a result, a decision was made to increase the use of litigation to collect on

6   defaulted accounts.

7
8   2.17   For example, in December 2009, the Municipal Employees Legal Services ("MELS")

9          for District Council 37 in New York released the results of a study they conducted

10         pertaining to debt buyer lawsuits. *See: Where's the Proof? When Debt Buyers are*

11         *Asked to Substantiate Their Claims in Collection Lawsuits Against NYC Employees*

12         *and Retirees, They Don't,* ("MELS Study") (December 2009), annexed (**Exhibit 5**).

13         After surveying 238 cases in which MELS was involved during the period from

14         January 1, 2008 to June 30, 2009, MELS made the following findings:

15             a. After MELS requested substantiation of the debt, the debt buyer responded

16             only 5.5% of the time;

17
18             b. Even when the debt buyer did respond, rather than showing that the debt was

19             owed, its own documentation often proved the opposite;

20             c. In 27% of cases, MELS's clients had only learned of the lawsuit after their

21             salary was garnished or bank account restrained – implying that the client had

22             not been properly served; and many other clients were not properly served in

23             accordance with the law but became aware of the lawsuit prior to a default

24             judgment or postjudgment  enforcement actions by the plaintiff. See: "MELS

25             Study," *See* **Exhibit 5 at 3 & 6.**

26
27  2.18   MELS determined that after a debtor defendant requested substantiation of the debt,

28         in 86.3% of cases, the plaintiff debt collector took no further action to collect the debt,

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit

including discontinuing the action in 13.7% of cases. See: "MELS Study," **Exhibit 5, at 5.**

2.19    The MELS Study concluded that "[t]he debt buyer business model is geared solely toward default judgments. Plaintiff creditors and debt collectors stop pursuing a lawsuit once a defendant retains a lawyer; and instead devote their resources to obtaining default judgments which do not go before a judge and require minimal if any proof." See: "MELS Study," **Exhibit 5, at 10**.

2.20.    Even when debtors do attempt to defend against these collection suits, they are frequently without means to retain a lawyer and effectively challenge the suit. For example, a white-paper written by The Legal Aid Society, MFY Legal Services, Inc., Neighborhood Economic Development Advocacy Project and the Urban Justice Center examined debt collection suits in New York City Civil Court between January 2006 and July 2008. *See generally: Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers*, ("Debt Deception") (May 2010), annexed hereto as **Exhibit 6** (examining two samples of cases from 26 debt buyers that filed *457,322* lawsuits in New York City Civil Court between January 2006 and July 2008 and were awarded an estimated $1.1 billion in judgments and settlements). Among the key findings were:

a. 95% of people with default judgments entered against them by the debt buyers resided in low- or moderate-income neighborhoods, and 56% lived in predominantly black or Latino neighborhoods;

b. Not a single person in the sample was represented by an attorney and only 1% of people sued by debt buyers are represented by counsel;

c. Only 10% of people sued answered the summons and complaint; and,

d. At least 71% of people sued were either not served or served improperly.

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit

-17-

See: "Debt Deception," **Exhibit 6, at 1-2.**

2.21 These abuses are by no means limited to third-party debt buyers, and are not limited to the New York samples reviewed in those large studies. To the contrary, the abuses occur nationwide and are engaged in by originating creditors, debt collection agencies on the creditors' behalf, and third party debt buyers.

2.22 Historically, lenders and their debt collectors typically only filed collection lawsuits on high-balance deficiencies (*e.g.*, in excess of \$20,000) because the lenders feared reputational risks associated with litigating a high volume of small value claims. Increasingly, however, card-issuers and other debt collectors, either acting on behalf of issuers or as third party debt buyers, have resorted to filing collection actions in state courts regardless of the balance and in extraordinarily high volume.

2.23 Claimant seeks a Trial by Jury, asking the jury to acknowledge that the note and any deed of trust was voided upon placement of the note or deed into REMIC/MBS, and seeks judgment against defendants for return of all sums received from Claimant, cancel for all time any foreclosure sale, and annul/cancel/terminate any purported rights that any holder, including the past, current or future holder(s) of the note have and annul/cancel/terminate any purported rights that any holder of any copy or the original bifurcated (separated) note and deed of trust, whether sole, or together; and, from engaging in these unlawful, unfair, and fraudulent practices; (b) an order requiring Defendants to expunge the fraudulent Note and Deed of Trust and assignments, Notice of Default, etc from the county recorder's office.

## Significance of REMIC.

2.24 Mortgage Backed Securities ("MBS") Certificates are "pass through certificates,"

where the Trust has elected to be treated as a Real Estate Mortgage Investment Conduit[2] ("REMIC") to enjoy the tax exempt status allowed under 15 U.S.C. §§806A-G. REMIC trust. REMIC regulations impose very strict limitations as to the nature of the investments a REMIC trust may make (i.e., "permitted investments") and transactions which it may not undertake (i.e., "prohibited transactions." Any violation of REMIC regulations have significant tax implications for the Trust, as well as all Certificate holders. Plaintiff's allegations are supported on authority cited at FN. 1.

2.25  Only income from "qualified mortgages" and "permitted investments" may enter a REMIC trust. A "qualified mortgage" is an obligation (i.e., mortgage) which is principally secured by an interest in real property which:

(1) was transferred to the Trust on the startup date;

(2) was purchased by the REMIC Trust within 3 months after the startup date; or;

(3) any qualified replacement mortgage.

2.26  Permitted investments are limited to:

a) Cash Flow Investment ("CFI") (i.e., temporary investment where the Trust holds money it has received from qualified mortgages pending distribution to the certificate holders):

b) Qualified Reserve Assets ("QRA") (i.e., any intangible property which is held for investment and is part of a reasonably required reserve to provide for full payment of expenses of the REMIC or amounts due on

---

[2]See Brooklyn Law School Research Paper No. 317, Dec. 2012: Once a Failed Remic, Never a Remic, by Professors Bradley T. Borden and David J. Reiss, annexed hereto as Exh. 7.

regular interest in the event of default on qualified mortgages or lower than expected returns on cash flow investments. These investments are for every defined purpose and are to be passive in nature. They must be "reasonably required."

c) Liquidation Proceeds from "foreclosed property" which is acquired in connection with the default or imminent default of a "qualified mortgage" held by the Trust.

2.27  In order to maintain the REMIC status, the Trustee and the Servicers must ensure that the REMIC receives no income from any asset that is not a "Qualified Mortgage" or a "Permitted Investment," 26 U.S.C. §806(F)(a)(2)(B).

2.28  Prohibited Transactions include the disposition of a qualified mortgage (except where the disposition is "incident to" the foreclosure, default, or imminent default of the mortgage); or the receipt of any income from an asset that is not a Qualified Mortgage or a Permitted Investment, 26 U.S.C. §860(F)(a)(2)(B).

2.29  Prohibited Transactions are taxed in an amount 100% of the REMIC's net income from such prohibited transactions, 26 U.S.C. §806(a)(1).

2.30  Contributions to facilitate a "clean up call" (i.e., the redemption of a class of regular interest, when by reason of prior payments with respect to those interests the administrative costs associated with serving that class outweigh the benefits of maintaining the class, Reg. §1.8-6G-2(j)(1).

### Any case payment in the nature of a guarantee, Such as payments to the REMIC

2.31  Claimants' on research, information and belief believe and thereon allege that any violation of REMIC regulations will defeat the privileged tax status and will subject the REMIC to 100% taxation, plus penalties and interest. These taxes and

1    penalties are ultimately borne by the Certificate holders, under surety bond, letter

2    of credit or insurance policy.

3

4    2.32    Claimants' on research information and belief believe and thereon allege that any

5            cash contribution during the three (3) month period after the start-up day; and any

6            cash contribution to a qualified reserve fund made by a holder of a residual

7            interest.

8    2.33    Claimants' on research, information and belief believe and thereon allege that on a

9            monthly basis, the Investment Banking firm and/or its agents, servants, personal or

10           employees are required to comply with REMIC rules, and each individually and in

11           concert, and the Respondents oversaw and approved all the information contained

12           in the Distribution Reports ("DR") and electronically sent same to certain parties.

13           The  date regarding the number of bankruptcies, aggregate Special Servicing Fees

14           ("SFS"), and aggregate Trust Fund Expenses was routinely incomplete,

15           constructively false, and/or misleading.

16

17   2.34    Claimants' on research, information and belief believe and thereon allege that the

18           Distribution Reports are supposed to accurately reflect the "financial health of the

19           trust," and provide Certificate holders with important date such as the number of

20           loans in bankruptcy, the aggregate amount of SFS, and the aggregate amounts of

21           trust fund expenses.  Each an ever one of these categories is essential to assess its

22           profits and loss potential in the REMIC entity.  Furthermore, this date is used by

23           bond rating agencies to assess the value of the Certificates.

24   2.35    Claimants' on research, information and belief believe and thereon allege that

25           based upon the filings and information of the Claimants' it appears that no

26           accurate accounting has ever been presented to anyone (especially to Claimants's)

27           and that therefore the identity and status of any putative holder in due course is

28

completely shrouded in secrecy enforced by these Respondents' and each of them

plus their agents, servants, personnel and employees. Unreported repurchases of

certificates or classes of certificates would and did result in a profit to the REMIC

that went unreported, and which was not credited to Borrowers where the

repurchase was, as was usually the case, far less than the original investment.

While the Claimants's would never have entered into a transaction if there was full

disclosure made to Claimants' by Respondents' and each of them disclosing the

true nature of this scheme was revealed, any profits, refunds, rebates, fees, points,

costs, or other income or gain should be  credit on some basis to said borrowers

including Claimants' herein.

2.36  Claimants' on research, information and belief believe and thereon allege that at

no time whatsoever did Respondents' and each of them ever advise Claimants'

that:

a) The mortgage loan being processed was not in their best interest;

b) That the Claimants' promissory note was equal to money;

c) That the Claimants' could make either a general or special deposit of
their promissory note;

d) That the originating "lender," had no intention of retaining ownership
interest in the mortgage loan or fully servicing same and in fact and may
have already pre-sold the loan, prior to closing, to a third party mortgage
Aggregator.

e) That the mortgage loan was actually intended to be repeatedly sold and

assigned to multiple third parties without disclosure to the Trustor of the

deed of trust, including one or more mortgage aggregators and investment

bankers (including but not limited to Respondents' and DOES 1-100), for

the ultimate purpose of bundling the Claimants' mortgage with hundreds or

perhaps thousands of others without disclosure to Claimants' as part of a

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

companion, support, or other tranche in connection with creation of a REMIC "mortgage-backed security" to be sold by a securities firm (and which in fact ended up collateral for Asset-Backed Securities Certificates, created the same year as the closing);

f) That the mortgage instrument and Promissory Note may be sold, transferred, or assigned separately to separate third parties so that the later "holder" of the Promissory Note may not be in privity with or have the legal right to foreclose in the event of default;

g) That in connection with the multiple down-line resale and assignment of the mortgage and Promissory Note that assignees or purchasers of the Note may make "pay-downs" against the Note which may affect the true amount owed by the Claimants' on the Note;

h) That a successive assignee or purchaser of the Note and Mortgage may not, upon assignment or purchase, unilaterally impose property insurance requirements different from those imposed as a condition of the original loan (also known as prohibition against increased forced-placed coverage) without the Claimants' prior notice and consent.

i) That should a default occur on the part of Claimants', that Claimants' was not to worry as there was default insurance for the full amount.

j) That should a default occur on the part of Claimants', that Claimants' was not to worry, as the lender would receive a tax credit.

k) That by signing the Note, the signer was actually funding the note.

l) That a currency exchange was taking place.

m) Etc. Etc. Etc.

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit

-23-

2.37 Claimants' on information, research and belief believe and thereon allege that as a result of the closing and in connection therewith, Respondents' and each of them placed Claimants' into a loan that vast number of elements were not disclosed to Claimants' causing the agreements to be unconscionable and misleading. Respondents' engaged in material omissions by failing to disclose to Claimants' the fact that Claimants''s was being placed into a mortgage program despite not being fully qualified for such a program.

2.38 Claimants' on information, research and belief believe and thereon allege that Prior to the closing, Respondents' failed to provide to Claimants' the preliminary disclosures required by the Truth-In-Lending Act pursuant to 12 Code of Federal Regulations (also known as an referred to herein as "Regulation Z") §226.17 and 226.18, and failed to provide the preliminary disclosures required by the Real Estate Settlement Procedures Act ("RESPA") pursuant to 24 C.F.R.§3500.6 and §3500.7, otherwise known as the GFE.

2.39 Claimants' on information, research and belief believe and thereon allege that Respondents' also intentionally failed and/or refused to provide Claimants' with various disclosures which would indicate to the Claimants' that the consumer credit contract entered into was void, illegal, and predatory in nature due in part to the fact that the final TIL, showed a "fixed rate" schedule of payments, but did not provide the proper disclosure of the actual contractually – due amounts and rates.

2.40 Respondents' failed and/or refused to provide a HUD-1 Settlement Statement at the closing which reflected the true cost of the consumer credit transaction. As Respondents' failed to provide an accurate GFE or Itemization of Amount Financed ("IOAF"), there was no disclosure of a Yield Spread Premium ("YSP,)" which is required to be disclosed by the Truth-In-Lending Act) and thus so

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit
-24-

1  disclosure of the true cost of the loan.

2
3  2.41  Claimants' on information, research and belief believe and thereon allege that
4  "YSP"means the money or rebate paid to a mortgage broker for giving a borrower
5  a higher interest rate on a loan in exchange for lower up-front costs, generally paid
6  in Origination fees, Broker fees or Discount Points. This "may [be used to] wipe
7  out or offset other loan costs, like Loan Level Pricing Adjustments concerning the
8  subject property.

9  2.42  Claimants' on information, research and belief believe and thereon allege that
10  Claimants' were not informed by the purported original Lender and the purported
11  sub-sequent lender if the alleged loan was connected with FNMA, HUD,
12  FREDDIE-MAC, or some other governmental owned entity.

13
14  2.43  Claimants' on information, research and belief believe and thereon allege that as
15  a direct and proximate result of these failures to disclose as required the
16  Truth-In-Lending Act, Respondents' received a YSP in a substantial amount
17  without preliminary disclosure, which is a per se violation of 12 C.F.R.
18  §§§§266.4(a), 226.17, 266.18(d) and 266.18(c)(1)(iii). The YSP raised the interest
19  rate which was completely unknown to or approved by the Claimants', as they did
20  not receive the required GFE or IOAF.

21  2.44  Claimants's on information, research and belief believes and thereon allege that in
22  addition, the completely undisclosed YSP was not disclosed by Respondents' in
23  their broker contract, which contract was blank in the area as to fees to be paid to
24  Defendant. This is an illegal kickback in violation of 12 U.S.C. §2607 as well as
25  State law which gives rise to all damages claims for all combined broker fees,
26  costs, and attorney's fees/like attorney's fees.

27  2.45  Claimants's on information, research and belief believe and thereon allege that the
28

amount allegedly financed within the TIL is also understated which is a material violation of 12 C.F.R. §§226.17 and 266.18, in addition to 15 U.S.C. §1602(u), as the amount financed must be completely accurate with no tolerance for errors.

2.46  Claimants's on research, information and belief believes and thereon allege that Respondents' were under numerous legal obligations as fiduciaries and had the responsibility for overseeing the purported loan consummation to insure that the consummation was legal, proper, and that Claimants' received all legally required disclosures pursuant to the Truth-In-Lending Act and RESPA both before and after closing.

2.47  Claimants' on research information and belief believes and thereon allege that Claimants's, not being in the consumer lending, mortgage broker, or residential loan business, reasonably relied upon the Respondents' to insure that the consumer credit transaction was legal, proper, and complied with all applicable laws, rules, and regulations.

2.48  Claimants' on research, information and belief believes and thereon allege that at all times relevant hereto, Respondents' regularly extended or offered to extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four (4) installments and was initially payable to the person the subject of the transaction, rendering Respondents' "creditors" within the meaning of the *Truth-In-Lending Act*, 15 U.S.C. §1602(f) and *Regulation Z* §226.2(a)(17).

2.49  Claimants' on research, information and belief believes and thereon allege that at the closing of the subject "loan transaction," Claimants' executed Promissory Notes and Security Agreements in favor of Respondents' as aforesaid. These transactions, designed by Respondents' to look like a Loan, and allegedly extended

1    consumer credit which was subject to a finance charge and which was initially
2    payable to the Respondents'. As part of the consumer credit transaction the subject
3    of the closing, Respondents' allegedly retained a security interest in the subject
4    property which was Claimants'(s) principal residential dwelling. See: Foreclosure
5    Defense Programs "Mortgage Loan Audit and Mortgage Backed Security
6    Analysis," annexed hereto as **Exhibit 1**. Despite looking like a loan, no loan took
7    place prior to signing the Note and Deed of Trust, but a currency exchange with
8    nearly a 300% interest rate is what actually took place without disclosing that this
9    is what DeClercks' would be involved with and getting.

10
11   2.50  Claimants' on research, information and belief believes and thereon allege that
     Respondents' engaged in a pattern and practice of defrauding Claimants' in that,
12
     during the entire life of the purported loan and mortgage, Respondents' failed to
13
     properly disclose credit payments made; incorrectly calculated interest on the
14
     account; and have failed to accurately debit fees. At all times material,
15
     Respondents' have actual knowledge that the Claimants' account was not accurate
16
     but that Claimants' would make further payments based on Respondents'
17
     inaccurate accounting.
18

19   2.51  Claimants' on research, information and belief believe and thereon allege that
20   Claimants' made payments based on the Respondents' improper, inaccurate, and
21   constructive fraudulent representations as to Claimants' account, though nothing
22   was ever loaned prior to signing of the Note and Deed of Trust **(Williams**
23   **Amend. Affid., Exh. 2, ¶ 7A)**.

24
25   2.52  Claimants' on research, information and belief believes and thereon allege that as a
     direct and proximate result of the actions of the Respondents' set forth above,
26
     Claimants' over paid in interest, when no interest ever was due or became due, as
27
     there was no loan given prior to signing the Note and Deed of Trust **(Williams**
28

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit
-27-

**Amend., Affid., Exh. 2, ¶ 7A).**

2.53  Claimants' on research, information and belief believes and thereon allege that Respondents' also utilized amounts known to the Respondents' to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

2.54  Claimants'on research, information and belief believes and thereon allege that Respondents' violations were all material in nature under the Truth-In-Lending Act.

2.55  Claimants' on research, information and belief believes and thereon allege that said violations, in addition to the fact that Claimants'(s) did not properly receive Notices of Right to Cancel, constitute violations of 15 U.S.C. §1635(a) and (b) and 12 C.F.R. §226.23(b), and are thus a legal basis for and legally extend Claimants' rights to exercise the remedy of rescission.

2.56  Claimants'(s) on research, information and belief believes and thereon allege that Respondents' assigned the Note and Mortgage and that there are/were parties that were not disclosed and are unknown to Claimants' who did not take these instruments in good faith and was not given notice that the instruments were invalid or that Claimants' have a claim in recoupment.

2.57  Claimants' on research, information and belief believe and thereon allege that the consumer credit transaction was an inter-temporal transaction with multiple assignments as part of an aggregation and this creation of a REMIC tranche itself a part of a predetermined and identifiable CMO, all Respondents' share in the illegal proceeds of the transaction; conspired with each other to constructively defraud the Claimants' out of the proceeds of the loan; and constructively acted in concert to wrongfully deprive the Claimants'(s) of their property (residence); And acted and continue to act in concert and conspiracy to essentially steal the

1   Claimants' property/house and/or convert the Claimants' property (home) without

2   providing Claimants' reasonably equivalent value in exchange; and conducted an

3   illegal enterprise within the meaning of Civil Rico statute.

2.58   Claimants' on research, information and belief believe and thereon allege that
given the volume of residential loan transactions solicited and processed by the
Respondents', the Respondents' have engaged in two or more instances of
racketeering activity involving different victims but utilizing the same method,
means, mode operation, and enterprise with  the same intended result, many which
have come to fruition.

2.59   Claimants' on research information and belief believes and thereon allege that
Respondents' wrongfully are attempting to cause a wrongful non-judicial
foreclosure of Claimants' property/house located at 976 E.1330 North Road,
Taylorville, Ilinois;  At this moment, foreclosure is  imminent.

2.60   Claimants' on research, information and belief believes and thereon allege that
Respondents', lack standing to cause a judicial or non-judicial foreclosure on
Claimants' property on the original promissory note or Deed of Trust to take
place, because at the time Respondents' initiated the foreclosure proceedings
against Claimants', the Respondents' were not and are not the holder in due course
of Claimants' original promissory note with regard to the subject property:  Said
Note and Deed of Trust including assignments are void as no loan was given by
Countrywide Home Loans or by any defendant prior to DeClercks' signing the
Note and Deed of Trust/Mortgage, rendering all the instruments void *ab initio*.

2.61   Claimants' on research, information and belief believes and thereon allege that
said sale will be illegal, constructive fraudulent or willfully oppressive of
Claimants' right to quiet enjoyment of the property under a power of sale

1   contained in a mortgage or deed of trust that is obsolete as the Note and DOT

2   were bifurcated, and void[3] as there was no loan given to DeClercks' prior to

3   signing the Note and DOT **(Williams Amend. Affidavit, Exh. 2, ¶¶ 7A, 12).**

4

5   2.62   Claimants' on information, research and belief believe and thereon allege that the

6          amount stated as due and owing in the notice of default is incorrect for one or

7          more of the following reasons:

8          a) A constructively fraudulent appraisal was used to inflate the value of the

9             home and hence the amount of the purported loan.

10         b) An incorrect interest rate and adjustment;

11         c) Incorrect tax impound;

12         d) Misleading payments;

13         e) Unnecessary forced placing of insurance;

14         f) No loan was given to Claimants' prior to signing the Note and Deed of

15            Trust/Mortgage **(Williams Amend. Affid., Exh. 2, ¶ 7A)**;

16         g) Defendant has no standing to foreclose **(Williams Amend. Affid., Exh.**

17            **2, ¶ 13)**.

18

19   2.63   Upon conducting discovery the reasons will be set forth with more particularity.

20                                **III. Claims for Relief**

21

22   3.1    Plaintiffs' identifies and makes reference to and incorporates as though set forth

23          fully the Paladin Associates *"LOAN AUDIT AND MORTGAGE-BACKED*

24          *SECURITY ANALYSIS (Updated February 2014)"* annexed hereto as Exhibit 1: it

25          [3]Carpenter v. Longan - 16 Walls. 271, 83 U.S. 271,274, 21 Led. 3 13 (1872), the United

26   States Supreme Court stated, "The note and mortgage are inseparable; the former as essential, the

27   latter as an incident. An assignment of the note carries the mortgage with it, while assignment of

     the latter alone is a nullity."

28

1  is a true and correct copy of the original received by me and in my possession.

3.2  Plaintiffs' identifies, makes reference to and incorporates as though set forth
fully the expert witness Amended Affidavit of Patrick F. Williams which is
annexed hereto as Exhibit 2: it is a true and correct copy of the original received by
me and in my possession.

3.3  Plaintiff states on information, research performed by Patrick F. Williams which is
made reference to as though set forth fully and annexed hereto as Exhibit 2
(Williams Amend. Affid., Exh. 2 ¶ 6F). Mr. Williams states the following at ¶6 F:
"On February 20, 2014, I reviewed legal documents publicly available at:
www.cwnnbssettlement.com in the matter of The Bank of New York Mellon vs.
Bank of America, both as a Servicer and as Successor to Countrywide with respect
to numerous Mortgage Backed Securities Trusts in which The Bank of New York
Mellon is Trustee. The outcome of proceedings in the Supreme Court of the State
of New York Index No. 651786-201 land the United States District Court for the
Southern District of New York Case No. 11-CV-5988 (WHP) required that Bank
of America pay US$ 8.5 Billion to the Trusts, and that proper Servicing procedures
be implemented, which in essence required that Bank of America turn over the
loan servicing of 530 trusts to other companies approved by the court. This loan is
the subject of these proceedings and is affected by the settlement, including the
Sub-servicing transfer to Specialized Loan Servicing, as Bank of America had
been determined to not be able to properly service these loans."

### Count 1.
### Identity Theft
### (720 ILCS 5/16-30)

3.4  Claimants' on information, research and belief believe and thereon allege that
Respondents' and each of them including, but not limited to Country Wide Home
Loans (the purported loan originator), its principal(s), successor(s), assigns and

third party affiliates whom without permission from Claimants' used Claimants'

identity information to steal money, and land/real estate estimated which false note

at maturity is approximately eight hundred thousand dollars ($800,000.00) via

fraudulent documents to unjustly enrich each of the participating Respondents,

which commenced from the time of the filling out of the purported and false loan

application, inducing Claimants' to sign the note, and deed of trust, assignments to

unknown third parties from 2007 to date.

**Count 2. Loan Fraud.**

**(720 ILCS 5/17-10.6)**

**Sec. 17-10.6 (d).**

> **Loan fraud.** A person commits loan fraud when he or she knowingly, with intent to defraud, makes any false statement or report, or overvalues any land, property, or security, with the intent to influence in any way the action of a financial institution to act upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action, or otherwise, or the acceptance, release, or substitution of security.

3.5   Claimants' on information, research and belief believe and thereon allege that

Country Wide Home Loans (the purported loan originator), its principal(s),

successor(s), assigns and third party affiliates whom without permission from

Claimants' used Claimants' identity information to steal money, and land/real

estate estimated which false note at maturity is approximately eight hundred

thousand dollars ($1,000,000.00) via fraudulent documents to unjustly enrich each

of the participating Respondents, which commenced from the time of the filling

out of the purported and false loan application, inducing Claimants' to sign the

note, and deed of trust, assignments to unknown third parties from 2007 to date.

3.6   Claimants' on information, research and belief believe and thereon allege that the

**Loan Fraud** that was committed was constructive in nature, and identified in

Paragraph One of the Note (Quoting Williams Amended Affid.):

¶7. I have found the following facts: **A.** On February 20,2014, I reviewed a copy of the Note in question (Marked Exhibit "9"). Section 1. BORROWER'S PROMISE TO PAY reads: *"In return for a loan that I have received, I promise to pay U.S. $292,000.00 (this amount is called principal)plus interest, to the order of the Lender.'* There is no indication or proof that the borrower would have received the loan in question prior to or at the time of being presented with this document to sign. The Note is dated February 05,2007 for the amount of $292,000.00 in favor of Countrywide Home Loans, Inc. To the left of the signature line is an endorsement stamp that reads "Pay to the Order of *[blank]* without Recourse Countrywide Home Loans, Inc. by: *[ stamped signature ]* Michele Sjolander, Executive Vice President."

3.7   Each of the Respondents and each of them from Respondents knowing that no loan was given prior to signing the Note and Mortgage, induced Claimants into signing the instruments, then caused said instruments to be notarized, then caused the Mortgage to be publicly recorded which instruments were false in the factum, ab initio.

3.8   Each of the Respondents, and each of them continued the constructively fraudulent practice when each participated in assigning successors, placement of the Note and Mortgage Instruments to be securitized, then assigning new successors and the Wirbicki Law Firm, who was noticed in August 2014 via Certified mail about the fraudulent foreclosure, fraudulent accusations set forth in the foreclosure complaint, yet now after continuing has resulted in them being added to this claim.

### Count 3.

3.9
720 ILCS 5/Art. 33G heading)
ARTICLE 33G. ILLINOIS STREET GANG
AND RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS LAW
(Article scheduled to be repealed on June 11, 2017)
(Source: P.A. 97-686, eff. 6-11-12.)

(720 ILCS 5/33G-1)
(Section scheduled to be repealed on June 11, 2017)
Sec. 33G-1. Short title. This Article may be cited as the Illinois Street Gang and Racketeer Influenced and Corrupt Organizations Law (or "RICO").
(Source: P.A. 97-686, eff. 6-11-12.)

**(720 ILCS 5/33G-2)**
**(Section scheduled to be repealed on June 11, 2017)**

**RICO**

3.10   Sec. 33G-2. Legislative declaration. The substantial harm inflicted on the people

and economy of this State by pervasive violent street gangs and other forms of

enterprise criminality, is legitimately a matter of grave concern to the people of

this State who have a basic right to be protected from that criminal activity and to

be given adequate remedies to redress its harms. Whereas the current laws of this

State provide inadequate remedies, procedures and punishments, the Illinois

General Assembly hereby gives the supplemental remedies of the Illinois Street

Gang and Racketeer Influenced and Corrupt Organizations Law full force and

effect under law for the common good of this State and its people.

(Source: P.A. 97-686, eff. 6-11-12.)

uses any personal identifying information or personal identification document of
another person to fraudulently obtain credit, money, goods, services, or other
property;

(2) uses any personal identification information or personal identification
document of another with intent to commit any felony not set forth in paragraph
(1) of this subsection (a);

(3) obtains, records, possesses, sells, transfers, purchases, or manufactures any
personal identification information or personal identification document of another
with intent to commit any felony;

(4) uses, obtains, records, possesses, sells, transfers, purchases, or manufactures
any personal identification information or personal identification document of
another knowing that such personal identification information or personal
identification documents were stolen or produced without lawful authority;

3.11   Responsible Parties. Claimants' on information, research and belief believe and

thereon allege that **Bank of New York** as the presumed successor of

**Countrywide Home Loans** , including each respondent identified herein is

responsible as a principal, successor, agent, employee, or co-conspirator at the time

of the incident and continuing to date, as to the following acts described herein.

(a) Every person who, with the intent to defraud, knowing that he or she
has  no authority to do so, signs the name of another person or of a fictitious
person to any of the items listed in subdivision (d) is guilty of forgery.

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit

-34-

(b) [omitted.]

(c) Every person who, with the intent to defraud, alters, corrupts, or falsifies any record of any will, codicil, conveyance, or other instrument, the record of which is by law evidence, or any record of any judgment of a court or the return of any officer to any process of any court, is guilty of forgery.

(d) Every person who, with the intent to defraud, falsely makes, alters, forges, or counterfeits, utters, publishes, passes or attempts or offers to pass, as true and genuine, any of the following items, knowing the same to be false, altered, forged, or counterfeited, is guilty of forgery: ... note, ... request for the payment of money, ... promissory note, ... any assignment of ... writing obligatory, or other contract for money or other property, contract, due bill for payment of money or property, receipt for money or property, ... ... the delivery of goods or chattels of any kind, or for the delivery of any instrument of writing, or acquittance, release or discharge of any debt, account, suit, action, demand, or any other thing, real or personal, or any transfer or assurance of money, certificate of shares of stock, goods, chattels, or other property whatever, or any letter of attorney, or other power to receive money, or to receive or transfer certificates of shares of stock or annuities, ... to let, lease, dispose of, alien, or convey any goods, chattels, lands, or tenements, or other estate, real or personal, or falsifies the acknowledgment of any notary public, or any notary public who issues an acknowledgment knowing it to be false; or any matter described in subdivision (b).

3.12   Claimants' on research, information and belief believe and thereon allege based on hiring of an Expert in the field of Banking, Loans, writing of Pooling and Servicing agreements, Patrick F. Williams, whom was hired by Claimants in February 2014 to perform an updated Loan Audit and Mortgage-Backed Security of the purported Loan instruments, including papers that are incidental to these Claims. Claimants base these claims on the research and information and Declaration made by the expert, regarding the purported Loan. Each of the Respondents acted Individually, or in concert with each other, regarding the following:

**1. Re: COUNTRYWIDE HOME LOANS INC.**

3.13   **a)** Plaintiff on information, research and belief believe and thereon allege that at the time of the signing of the first Note (No. 156564754 by Stan Zotas) - See: Mortgage Loan Audit and Mortgage Backed Security Analysis, updated February

1    2014, p. 5 and annexed hereto as Exhibit 1) on February 5th 2007), it appears that
2    COUNTRYWIDE induced Claimants' to sign the Promissory Note and Deed of
3    Trust ("DOT or Mortgage") then subsequently induced Claimants' to believing
4    they had given us a loan prior to signing the Note and DOT.

5         (i). The Adjustable Rate "Promissory" Note (No. 156564754 by Stan
6         Zotas) at ¶ 1 states: "In return for a loan that I have received, I promise to
7         pay Two hundred ninety two thousand and 00/100 Dollars (U.S.
8         $292,000.00) (this amount is called "principal"), plus interest, to the order
9         of the Lender. The lender is COUNTRYWIDE HOME LOANS, INC."

10   3.14  b) Claimants' on information, research and belief believe and thereon allege that
11   COUNTRYWIDE HOME LOANS, at the time of the signing of the Note and
12   DOT CWHL never gave Claimants' a loan prior to signing of the Note and DOT,
13   though said instrument falsely asserts and claim such a loan was "...received."

14
15   3.15  c) Claimants' on information, research and belief believe and thereon allege that
     COUNTRYWIDE knowing said instruments were false, and that no loan was
16   given prior to signing of the instruments (Note and Deed of Trust, CWHL itself
17   and through its employee, agent, third party affiliate, or escrow company filed or
18   caused the Note or Deed of Trust to be filed into the Public records at the Christian
19   county recorder's office, CWHL its officers, employees, agents, allowed said false
20   instruments to be published in the records of the Christian county recorder's office.
21   CWHL committed the above two acts of recording with intent to constructively
22   defraud, corrupt the actual process by filing or allowing its employees, agents or
23   third party affiliates to file the two false instruments, and did pass or attempted or
24   offered to pass, the documents as true and genuine, the delivery of the two
25   instruments to the filing clerk of the county recorder, who on or about 3/16/2007
26   did record and publish said false instruments into the county records as instructed
27   to by CWHL or its officer(s), employee(s) or agent(s), and third party affiliates
28

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit
-36-

thereby violating **Sec. 17-10.6(d)** et seq. which *inter-alia*, violated the peace and dignity of the people of the state of Illinois, and Claimants' and all other parties who may be damaged by the false Note and Deed of Trust instruments when they recorded, published the same in county records.

3.16   **d)** Claimants' on information, research and belief believe and thereon allege that Claimants' were led to believe they received a loan at the time of signing the Note and Deed of Trust/Mortgage, but actually, no loan was given as evidenced in Expert witness Patrick F. Williams Amended Affidavit (Exh. 2 ¶7A), which is made reference to as though set forth fully.

**2. Re: The Respondents and each of them, its Principals, Associates, Employees, Agents, their Third Party Affiliates, Successors, etc.**

3.17   **a)** Claimants' on information, research and belief believe and thereon allege that at the time of the incident, February 5th 2007, COUNTRYWIDE HOME LOANS instructed its employee/notary/agent SARAH E. BOYD to execute a Notarized "Certificate of Acknowledgment" for the Note and Deed of Trust dated November 5th 2004, which instruments CWHL knew to be false, misrepresent certain facts, that no loan was given to DeClercks' prior to her signing the instruments, which violated the peace and dignity of the people of Illinois and DeClercks'.

3.18   **b)** Claimants' on information, research and belief believe and thereon allege that CWLS knew that no loan was given to Claimants' prior to signing of the Note and Deed of Trust, thus creating a false Note and a false Deed of Trust, but CWHL etc., appears to have withheld that false information to the Notary.

**Count 2. False Fraudulent, Fictitious, Publication of Instrument in writing.**

3.19   Claimants' on information, research and belief believe and thereon allege that Countrywide Home Loans, through its officer, agent, or third party affiliate

1   induced claimants' (DeClercks') to sign a note and deed of trust with intent to

2   defraud, pass, publish a fictitious note, or other instrument in writing for the

3   payment of money or property on February 5, 2007.  Countrywide Home Loans,

4   its principals, officers' employees, agents and assigns have continually violated the

5   peace and dignity of the people of Illinois.

6

       **Count 3. Violation of Home Ownership Equity Protection Act.**

7   3.20  Claimants's re-affirms and re-alleges the above paragraphs 1 through 106 as

8         though set forth fully.

9

10  3.21  Claimants's on information, research and belief believe and thereon allege that in

11        1994, the United States Congress ("Congress") enacted the Home Ownership

12        Equity Protection Act ("HOEPA") which is codified at 15 U.S.C. §1639 et. seq.

13        with the intention of protecting homeowners from predator lending practices

14        targeted at vulnerable consumers.  HOEPA requires lenders to make certain

15        defined disclosures and prohibits certain terms from being included in home loans.

16        In the event on noncompliance, HOEPA imposes civil liability for rescission and

17        statutory and actual damages; or, in the alternative Protection under Uniform

18        Commercial Code.

19

20  3.22  Claimants's on information, research and belief believe and thereon allege that

21        Claimants' are "consumers" and each Defendant is a "creditor" as defined by

22        HOEPA. In the mortgage loan transaction at issue here, Claimants' were required

23        to pay excessive fees, expenses, and costs which exceeds more than 10% of the

24        amount financed.

25  3.23  Claimants's on information, research and belief believe and thereon allege that

26        pursuant to HOEPA and specifically 15 U.S.C. §1639(a)(l), each Defendant is

27        required to make certain disclosures to the Claimants' which are to be

28

1  conspicuously and in writing no later than three (3) days prior to said

2  closing:

> "You are not required to complete this agreement merely because you have
> received these disclosures or have signed a loan application. If you obtain
> this loan, the lender will have a mortgage on your home. You could lose
> your home and any money you have put into it, if you do not meet your
> obligation under the loan."

3.24  Claimants's on information, research and belief believe and thereon allege that

Respondents violated HOEPA by numerous acts and material omissions,

including but not limited to:

a)  Failing to make the foregoing disclosure in a conspicuous fashion;

b)  Engaging in a pattern and practice of extending credit to Claimants'

without regard to their ability to repay in violation of 15 U.S.C. §1639(h).

3.25  Claimants's on information, research and belief believe and thereon allege that by

virtue of the Respondents' multiple violations of HOEPA, Claimants' have a legal

right to rescind the consumer credit transaction the subject of this action pursuant

to 15 U.S.C. §1635. This claim/complaint is to be construed, for these purposes,

as formal and public notice of Claimants' Notice of Rescission of the mortgage

and note.

3.26  Claimants' on information, research and belief believe and thereon allege that

Respondents further violated HOEPA by failing to make additional disclosures,

including but not limited to Claimants' not receiving the required disclosure of the

right to rescind the transaction; the failure of Respondents to provide an accurate

TILA disclosure; and the amount financed being understated[4].

---

[4]Section 226.15(a)(3) of Regulation Z defines "material disclosures" as "the information
that must be provided to satisfy the requirements in §226.6 with regard to the method of
determining the finance charge and the balance upon which a finance charge will be imposed, the

3.27  Claimants' on information, research and belief believe and thereon allege that as a direct and proximate cause and consequence of an in connection with Claimants' legal and lawful exercise of their right of rescission, the true "lender" is required, within twenty (20) days of this Notice of Rescission, to:

> a) Desist from making any claims for finance charges in the transaction;
>
> b) Return all monies paid by Claimants' in connection with the transaction to the Claimants';
>
> c) Satisfy all security interests, including mortgages, which were acquired in the transaction.

3.28  Claimants' on information, research and belief believe and thereon allege that upon the true "lenders" full performance of its obligations under HOEPA, Claimants' shall tender all sums to which the true "lender" is entitled.

3.29  Claimants' on information, research and belief believe and thereon allege that based on Respondents' HOEPA violations, each of the Respondents is liable to the Claimants's for the following, which Claimants's demand as relief, and in the alternative under common law is entitled to the following:

> a)  Rescission, cancellation, termination of the alleged mortgage loan transaction;
>
> b) Rescission, cancellation, termination of the mortgage and security interest in the property the subject of this mortgage loan documents created in this transaction by the Respondents. Regulation Z, 12 C.F.R. § 226.18.

---

annual percentage rate, the amount or method of determining the amount of any membership or participation fee that may be imposed as part of the plan, and the payment information described in §226.5b(d)(5)(i) and (ii) that is required under §226.6(e)(2)."

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit
-40-

c)  Return of any money or property paid by the Claimants's to Respondents including all payments made in connection with the transactions;

d)  An amount of money equal to three times the amount of the Note at Maturity, and three times the amount of finance charged in connection with the transaction;

e)  Relinquishment, termination, cancellation of any right to retain any proceeds to date; and

f)  Actual damages in an amount to be determined at trial by jury, or highest verdict amounts, including attorney's fees and/or like attorney/counsel fees.

### Count 4: VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT

3.30  Claimants' re-affirms and re-alleges paragraphs above as though fully set forth herein.

3.31  Claimants' on research, information and belief believe and thereon alleges that as mortgage lenders, Respondents are subject to the provisions of the Real Estate Settlement Procedures act ("RESPA"), 12 U.S.C. §2601 et. seq..

3.32  Claimants' on research, information and belief believes and thereon alleges that Respondents are in violation of 12 U.S.C. §2607 and in connection with the mortgage loan to Claimants', Respondents accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed.

3.33  Claimants' on information, research and belief believe and thereon allege that as a result of the Respondents violations for RESPA or in the alternative, Respondents are liable to Claimants' in an amount equal to three (3) times the amount of charges paid by Claimants' for "settlement services" pursuant to 12 U.S.C.

§2607d(2).

## Count 5: VIOLATIONS OF FEDERAL TRUTH IN LENDING ACT

3.34  Claimants' re-affirms and re-allege paragraphs above herein as though set forth fully.

3.35  Claimants' on research, information and belief believes and thereon alleges that Respondents failed to include and disclose certain charges in the finance charge shown on the TIL statement, which charges were imposed to on Claimants' incident to the extension of credit to the Claimants' and were required to be disclosed pursuant to 15 U.S.C. §1605 and Regulation Z §226.4, thus resulting in an improper disclosure of finance charges in violation of 15 U.S.C. §1601 et. seq., Regulation Z §226.18(d). Such undisclosed charges include a sum identified on the Settlement Statement listing the amount financed which is different from the sum listed on the original Note.

3.36  Claimants' on research, information and belief believes and thereon alleges that by calculating the annual percentage rate ("APR") based upon improperly calculated and disclosed amounts, Respondents are in violation of 15 U.S.C. §1601 et. seq., Regulation Z §§§ 226.18(c), 18(d) and 22.

3.37  Claimants' on research, information and belief believes and thereon alleges that Respondent's failure to provide the required disclosures provides Claimants' with the right to rescind, terminate, cancel the transaction, and Claimants', through this public Claim which is intended to be constructed, for purposes of this claim, as a form Notice of Rescission, cancellation and repudiation, and hereby elect to rescind, cancel and terminate the transaction.

### Count 6: VIOLATION OF FAIR CREDIT
### REPORTING ACT/COMMON LAW RIGHT OF EXPUNGEMENT

1 **OF RECORDS AT RECORDER and RESCISSION.**

2
3.38 Claimants's reaffirms and re-alleges paragraphs above herein as though set forth

3
fully.

4

5 3.39 Claimants's on research, information and belief believes and thereon alleges that at

6 all times material, Respondents qualified as a provider of information to the Credit

7 Reporting Agencies, including but not limited to Experian, Equifax, and Trans

8 Union, under the Federal Fair Credit Reporting Act. Respondents wrongfully,

9 improperly, and illegally reported negative information as to the Claimants' to one

10 or more Credit Reporting Agencies, resulting negative in Claimants' having

11 negative information on their credit reports and the lowering of their FICO

12 scores.

13
3.40 Claimants's on research, information and belief believes and thereon alleges that

14
that pursuant to 16 U.S.C. §1681(a)(2)(b), or in the alternative, according to

15
common law Claimants's are entitled to maintain a private cause of action against

16
Respondents for an award of damages in an amount to be proven at the time of

17
trial of all violations of the Fair Credit Reporting Act and those which caused

18
actual damages to Claimants', including financial loss, loss of reputation,

19
emotional distress and humiliation.

20

21 3.41 Claimants' on research, information and belief believes and thereon alleges that

22 Claimants's are entitled to recover damages from Respondents for negligent non-

23 compliance with the Fair Credit Reporting pursuant to 15 U.S.C. §1681(o); or in

24 the alternative recover damages under the common law.

25
3.42 Claimants' on research, information and belief believes and thereon alleges that

26
that Claimants' are also entitled to recover damages from Respondents for the

27
willful non-compliance with the Fair Credit Reporting pursuant to 15 U.S.C.

28

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit
-43-

1    §1681(n)(a)(2) in an amount to be proven at time of trial; or in the alternative

2    recover damages according to the common law.

## Count 7: CONSTRUCTIVE FRAUDULENT MIS-REPRESENTATIONS

3.43  Claimants' re-affirms and re-alleges paragraphs above as though set forth fully.

3.44  Claimants' on research, information and belief believes and thereon alleges that
      Respondents constructively knowingly and intentionally concealed material
      information from Claimants' at the time of the origination of the purported loan
      and through the present date. Defedants are required by Federal Statutes and
      Regulations and common law to disclose to the Claimants' both at the
      commencement and at the closing. Defendants were holding themselves out as
      ones giving loans. However, no loan was given by defendants, though Defendants
      promised to give a loan. Defendants instead, tricked Plaintiffs into giving
      property to Defendants without any consideration. Defendants then after
      receiving the Note performed a currency exchange with other third parties, and did
      not credit DeClercks account. Defendants then induced Plaintiffs into signing a
      thirty year indenture after Plaintiffs were induced to give away their property and
      pay Defendants over a thirty year period, and pay Defendants for the privilege.

3.45  Claimants' on research, information and belief believes and thereon alleges that
      Respondents' constructively misrepresented material information to the
      Claimants' with full knowledge by Respondents that their affirmative
      representations were constructively false, fraudulent, and misrepresented the truth
      at the time said representations were made.

3.46  Claimants' on research, information and belief believes and thereon alleges that
      under the circumstances, the constructive omissions and material
      misrepresentations of the Respondents were constructively malicious.

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit

-44-

3.47   Claimants' on research, information and belief believes and thereon alleges that
       Claimants', not being investment bankers, securities dealers, mortgage lenders, or
       mortgage brokers, reasonably relied upon the representations of the Respondents
       in agreeing to execute and sign the Note and Mortgage loan documents.

3.48   Claimants' on research, information and belief believes and thereon alleges that
       had Claimants' known of the falsity of Respondents representations, Claimants'
       would not have entered into the transactions which is the subject of this action.

3.49   Claimants' on research, information and belief believes and thereon alleges that as
       a direct and proximate cause of the Respondents' constructive material omissions
       and material misrepresentations, Claimants' have been damaged.

## Count 8: BREACH OF FIDUCIARY DUTY

3.50   Claimants' re-affirms and re-alleges paragraphs above as though set forth fully
       herein.

3.51   Claimants' on research, information and belief believes and thereon alleges that
       Respondents, by their actions in contracting to provide mortgage loan services
       and a loan program to Claimants' which was not best suited to the Claimants'
       given their income and expenses but by which Claimants' would also be able to
       satisfy their obligations without risk of losing our house, Countrywide Home
       Loans and successors, principals, and agents are and were "fiduciaries" in which
       Claimants' reposed trust and confidence, especially given that Claimants' are not
       and never were investment bankers, securities dealers, mortgage lenders, or
       mortgage brokers.

3.52   Claimants' on research, information and belief believes and thereon alleges that
       Respondents breached their fiduciary duties to the Claimants' by constructive
       fraudulently inducing Claimants' to enter into a mortgage transaction which was

1    contrary to Claimants' stated intentions, contrary to the Claimants' interests, and

2    contrary to the Claimants' preservation of our house.

3

3.53   Claimants' on research, information and belief believes and thereon alleges that as

4    a direct and proximate result of the Respondents' breaches of their fiduciary

5    duties: Claimants' have been damaged and continue to be damaged.

6

7    3.54   Claimants' on research, information and belief believes and thereon alleges that

8    under the totality of the circumstances, the Respondents' actions were willful,

9    wanton, intentional, and with a callous and reckless disregard for the rights of the

10    Claimants' which justifies an award of not only actual compensatory damages but

11    also treble damages, exemplary and punitive damages to serve as a deterrent not

12    only as to future conduct of the named Respondents herein, but also to other

13    persons or entities with similar inclinations.

14

**Count 9: UNJUST ENRICHMENT**

15

3.55   Claimants' re-affirms and re-alleges paragraphs above herein as though set forth

16    fully herein.

17

18

3.56   Claimants' on research, information and belief believes and thereon alleges that

19    Respondents had an implied contract with Claimants' to ensure that Claimants'

20    understood all fees which would be paid to the Respondents to obtain credit or

21    currency exchange on Claimants' behalf and to not charge any fees which were

22    not related to the settlement of the loan and without full disclosure to Claimants'.

23

24    3.57   Claimants' on research, information and belief believes and thereon alleges that

25    Respondents had full knowledge that a "bait and switch" rate predatory

26    mortgage with an increase in the interest rate due to the YSP paid to the Broker

27    for the "up sell" was not in the Claimants' best interest. Respondents cannot, in

28

good conscience and equity, retain the benefits from their actions of charging a
higher interest rate, fees, rebates, kickbacks, profits and gains and YSP fee
unrelated to the settlement services provided at closing.

3.58 Claimants' on research, information and belief believes and thereon alleges that
Respondents have been unjustly enriched at the expense of the Claimants', and
maintenance of the enrichment would be contrary to the rules and principles of
equity.

3.59 Claimants' on research, information and belief believes and thereon alleges that
Claimants' thus demand restitution from the Respondents in the form of actual
damages, exemplary and punitive damages, attorney's and like attorney's fees,
including costs.

## Count 10: CONSTRUCTIVE CIVIL CONSPIRACY

3.60 Claimants' re-affirms and re-alleges paragraphs above as though set forth fully.

3.61 Claimants' on research, information and belief believes and thereon alleges that in
connection with the application for and consummation of the mortgage loan which
is the subject of this action and in connection with Law Suit and Notice of Trustee
Sale subject to this action, Respondents agreed, between and among themselves, to
engage in actions and a course of conduct designed to further an illegal act or
accomplish a legal act by unlawful means, and to commit one or more overt acts in
furtherance of the constructive conspiracy to defraud the Claimants' (Williams
Amend. Affidavit).

3.62 Claimants' on research, information and belief believes and thereon alleges that
Respondents agreed between and among themselves to engage in the constructive
conspiracy to defraud the common purposes of accruing economic gains for
themselves at the expense of and detriment to the Claimants', as no loan was given

1    to Claimants' prior to signing the Note and Mortgage instruments (Williams

2    Amend. Affid., ¶ 7A).

3 | 3.63  Claimants' on research, information and belief believes and thereon alleges that

4    the actions of the Respondents were constructively committed intentionally,

5    willfully, wantonly, and with reckless disregard for the rights of the Claimants'.

6

7 | 3.64  Claimants' on research, information and belief believes and thereon alleges that as

8    a direct and proximate result of the actions of the Respondents in combination

9    resulting in fraud and breaches for the fiduciary duties, filing, publishing

10    instruments into the public record that are known to be false: Claimants' have

11    suffered damages and continues to receive injury/damage.

12

## Count 11: CONSTRUCTIVE CIVIL RICO

13

14 | 3.65  Claimants' re-affirms and re-alleges paragraphs above as though set forth fully.

15 | 3.66  Claimants' on research, information and belief believes and thereon alleges that

16    the conspiracy the subject of this action has existed from the date of application to

17    the present, with the injuries and damages resulting therefrom and continuing.

18

19 | 3.67  Claimants' on research, information and belief believes and thereon alleges that

20    Respondents have received money from a pattern of racketeering activity in

21    connection with the purported loan transaction and through the false foreclosure

22    process that is now taking place and continuing.

23 | 3.68  Claimants' on research, information and belief believes and thereon alleges that

24    Respondents have invested that money in enterprises crossing interstate

25    boundaries.

26

27 | 3.69  Claimants' on research, information and belief believes and thereon alleges that

28

1     "Respondents are involved in an enterprise affecting interstate commerce by

2     making constructive loans in various States." See: *Bunker Ramo Corp. v United*

3     *Business Forms, Inc.*, 713 F2d 1272 (1983, CA7 Ill).

4

3.70     Claimants' on research, information and belief believes and thereon alleges that

5     Respondents have caused numerous homeowners injury resulting from the

6     investment of racketeering income distinct from an injury caused by the predicate

7     acts themselves.

8

9 3.71     Claimants' on research, information and belief believes and thereon alleges that

10     Claimants' need not prove economic motive because the Courts have held that

11     neither 18 U.S.C. §1961's RICO definitions of *"pattern of racketeering activity"*

12     and *"enterprise"* or the provisions of §1962(c) require an economic motive. An

13     enterprise without profit motives are equally capable as a *"for-profit"* entity of

14     acquiring or generating money from illegal activity. For example, abortion

15     protestors can be sued under RICO for alleged extortion by harming businesses

16     like abortion clinics. See *National Organization for Women, Inc. v. Scheidler*,

17     510 U.S. 249, 114 S. Ct. 798, 127 L. Ed. 2d 99 (1994).

18

19 3.72     Claimants' on research, information and belief believes and thereon alleges that

20     Respondents and each of them have crossed State lines with their banking

21     activities and enterprises for profit while not disclosing all elements of the loan

22     process to Claimants' prior to closing and at closing, and, never having disclosed

23     said information.

24 3.73     Claimants' on research, information and belief believes and thereon alleges that

25     the Respondents and each of them and the enterprise are separate

26     persons/entities/men and women. The enterprise does consist of 3rd party(ies)

27     investors and PSA participants' for profit.

28

3.74 Claimants' on research, information and belief believes and thereon alleges that the Respondents are a party to the Civil Rico Claim and a target as a person involved in the criminal activity other than the enterprise.

3.75 Claimants' on research, information and belief believes and thereon alleges that the Civil Rico is of a commercial banking nature and security packages are sold to third (3rd) parties as investors or to PSA participants' for profit that are not the Respondents.

3.76 Claimants' on research, information and belief believes and thereon alleges that the Respondent original bank was involved in overcharging consumer loans. See *Morosani v. First Nat. Bank*, 581 F Supp 945 (1984, ND Ga), summary judgment den. 581 F. Supp 955, 135.

3.77 Claimants' on research, information and belief believes and thereon alleges that the Respondents have been involved in ill-gotten gains this action by overcharging fees, refusing to disclose vital information, refusing to disclose that they would or will sell or sold or assign/assigned the promissory note to investors, REMIC or PSA third (3rd) parties causing "competitive injury" to Claimants'.

3.78 Claimants' on research, information and belief believes and thereon alleges that the constructive conspiracy which is the subject of this action has existed from the date of application to the present, with the injuries and damages resulting there from are continuing.

3.79 Claimants' on research, information and belief believes and thereon alleges that Respondents' actions and use of multiple corporate entities, multiple parties, and concerted pre-determined acts and conduct were specially designed to constructively defraud Claimants' and constitutes an "enterprise" with the aim and objective of the enterprise being to perpetrate a constructive fraud upon the

1 Claimants' through the use of intentional non-disclosure, material

2 misrepresentations, and creation of constructively fraudulent loan documents. See

3 Exhibit 1, and 2.

4

5 3.80 Claimants' on research, information and belief believes and thereon alleges that

6 each of the Respondents are an *"enterprise  Respondent."* As a direct and

7 proximate result of the actions of the Respondents, Claimants' have and continue

8 to suffer injuries and are continually being injured/damaged.

9 **Count 12: SET ASIDE NOTICE OF TRUSTEE SALE & CASE & SALE**

10 3.81 Claimants' re-affirms and re-alleges paragraphs above as though set forth fully.

11

12 3.82 Claimants' on research, information and belief believes and thereon alleges that

13 BANK OF NEW YORK MELLON through SPECIALIZED LOAN SERVICING

14 ("SLS") has filed a Trustee's Foreclosure Suit.

15 3.83 Claimants' on research, information and belief believes and thereon  alleges that

16 BANK OF NEW YORK MELLON through SPECIALIZED LOAN SERVICING nor

17 their predecessors have  no authority or right to perform  a  trustee's  sale, though

18 power was wrongfully given in a patently false note and the void/voidable deed  of

19 trust, as there was no loan given prior to DeClercks' signing the Note and Deed of

20 Trust (Williams Amended Affidavit, Exh. 2, ¶ 7A).

21

22 3.84 Claimants' on research,information and belief believes and thereon alleges that

23 since the Respondents served Claimants' a foreclosure petition, and hired an expert

24 in Banking, Loans, Audits and Analysis, and which expert stated in his Amended

25 Affidavit.

26 ¶ 7. "I have found the following facts:

27 **A.** On February 20,2014, I reviewed a copy of the Note in question (Marked
Exhibit "9"). Section 1. BORROWER'S PROMISE TO PAY reads: *"In
return for a loan that I have received, I promise to pay U.S. $292,000.00*

28

1

2

3

4

5

6

7

*(this amount is called 'principal') plus interest, to the order of the Lender.* There is no indication or proof that the borrower would have received the loan in question prior to or at the time of being presented with this document to sign. The Note is dated February 05, 2007 for the amount of $292,000.00 in favor of Countrywide Home Loans, Inc. To the left of the signature line is an endorsement stamp that reads "Pay to the Order of *[blank]* without Recourse Countrywide Home Loans, Inc. by: *[stamped signature]* Michele Sjolander, Executive Vice President.

¶13. It is my professional opinion that The Bank of New York Mellon FKA The Bank of New York, a trustee for the Certificate holders of CWABS Inc., Asset-Backed Certificates, Series 2007-1 has not proven standing s the beneficial interest holder of the Note in this proceeding."

8   3.85  Claimants' on research, information and belief believes and thereon alleges that

9   despite the fact that DeClercks' executed a Note and Deed of Trust in 2007, said

10   instruments were void and must be terminated, cancelled, voided as a matter of law

11   because no loan was given prior to signing of the instruments (Williams Amend.

12   Affidavit, Exh. 2, ¶ 7A).

13

14   3.86  Claimants' on research, information and belief believes and thereon alleges that

15   according to Illinois Secretary of State, Bank of New York, CWABS, Inc., Tristar

16   Title LLC, are not registered or authorized to do business in Illinois.

17   3.87  Claimants' on research, information and belief believes and thereon alleges that

18   Countrywide Home Loans closing by Office of Thrift Supervision it no had

19   authority to make any assignment affecting Claimants' property after being closed

20   in 2009.

21

22   3.88  Claimants' on research, information and belief believes and thereon alleges that

23   Countrywide Home Loans, Bank of New York, CWABS nor SLS have no

24   authority to make any assignment, or power to appoint a trustee, sell said note and

25   DOT/Mortgage since no loan was given to DeClercks' prior to DeClercks'

26   signed the Note despite the misrepresentations made by Countrywide at paragraph

27   1 (Exhibit 1, and Williams Amend. Affid., Exh. 2, ¶ 7A).

28

3.89  Claimants' on research, information and belief believes and thereon alleges that
Respondents lack standing or capacity to bring about foreclosure proceedings on
Claimants' property because none of them are/were the holder in due course of
Claimants' void/voidable, and fraudulent testimony in original promissory note
when Respondents and each of them commenced foreclosure proceedings; and
each of the Respondents are nothing more than scurrilous debt collectors
(Williams Amend. Affid., Exh. 2, ¶¶ 7,8,9,12 and 13).

3.90  Claimants' on research, information and belief believes and thereon alleges that as
a direct and proximate result of the actions of each of the Respondents, Claimants'
have and continue on a monthly basis being injured and further damaged by
Respondents and each of them.

## Count 13: QUIET TITLE

3.91  Claimants' re-affirms and re-alleges paragraphs above as though set forth fully
herein.

3.92  Claimants' on research, information and belief believes and thereon alleges that
the property (real estate) that is the subject of this action is located and commonly
known as: 976 ·E 1330 North Road, Taylorville, Illinois.

3.93  Claimants' on research, information and belief believes and thereon alleges that
the legal description of the property is under land patent/rancho and said facts
shall be set forth once that information has been ascertained.

3.94  Claimants' seeks a determination of right to the Title of the property.

3.95  Claimants' are and at all times herein mentioned was and are the owner of the
property (land) and purchased the property (real estate) from the prior owner which
formed a valid and binding contract entitling Plaintiff to possession and title of the

1  property (land) and the house (real estate) (Exhibit 7).

2
3.96  Claimants' are and at all times mentioned was the owner and/or entitled to
3
possession of the land/property located and described in a Land Patent which
4
remain unidentified at this time which shall be identified when ascertained;
5
and the house property (real estate) identified by an Rural Free Delivery address:
6
976 ·E 1330 North Road, Taylorville, Illinois.
7

8  3.97  The Subject property is fully and situate as described:  976 ·E 1330 North Road,

9  Taylorville, Illinois: commonly known as: PART OF THE SOUTHVVEST

10  QUARTER {SW 1/4) OF THE SOUTHEAST QUARTER (SE 1/4) OF SECTION

11  30, TOWNSHIP 13 NORTH, ·RANGE 2 WEST OF THE THIRD PRINCIPAL

12  MERIDIAN DESCRIBED /JS FOU.OWS: BEGINNING AT AN IRON PIN ON

13  THE NORTH UNE OF SAID SW 1/4 OF SE 114LOCATED 503.6 FEET EAST

14  OF THE NORTHEAST CORNER OF SAID TRACT MEASURED EAST 495.28

15  FEET ALONG THE NOR11i UNE OF SAID TRACT TO AN IRON PIN;

16  THENCE SOUTH 0 DEGREES 00' 20"' EAST 1,319.43 FEET TO AN IRON PIN

17  ON THE SOUIli UNE OF THESE 1/4 OF SAID SECTION 30; THENCE

18  NORTH 89 DEGREES 57' 08" WEST 495.28 FEET TO AN IRON PIN;

19  THENCE NORTH 0 DEGREES 00' 20" WEST 1319.04 FEET TO TI-IE PIACE

20  OF BEGINNING.

21
3.98  Claimants' based on information, research believe and thereupon allege that
22
Defendants and each of them, falsely and wrongfully claims an interest in the
23
property described above and is wrongfully attempting to convert title to
24
themselves through unwarranted improper judicial process, and Defendants and
25
each of their interests in the property, real estate are adverse to Claimants' interest
26
herein. However, the claim of said Defendants are without any legal or equitable
27
right whatsoever, and said Defendants have no legal or equitable right, claim, or
28

1    interest in said property or real estate. See Loan Analysis (Exhibit 1) and the

2    Amended Affidavit of Patrick F. Williams (Exhibit 2).

## Count 14. VIOLATIONS OF BUSINESS and PROFESSIONS and OCCUPATIONS CODE

3.99  Claimants' reaffirm and re-allege paragraphs above herein as if specifically set forth more fully herein below.

3.100 Claimants' on research, information and belief believes and thereupon alleges that by committing the acts described, the Defendants, and each of them, have engaged in unfair business practices, causing injury and damages to Claimants'.

3.101 Claimants' on research, information and belief believes and thereupon alleges that when the defendants initiated and continued the wrongful acts mentioned herein, Claimants' are entitled to relief.

## Count 15. SLANDER OF TITLE

3.102 Claimants' reaffirm and re-allege paragraphs above herein as if specifically set forth more fully herein below.

3.103 Claimants' on research, information and belief believes and thereupon alleges that the Defendants and each of them, in taking the actions aforementioned, have made a constructively false and malicious written or spoken public statement disparaging Claimants' title to property and real estate that continues to cause harm for which special damages may be awarded slander of title – See: *M & P Concrete Products, Inc. v. Woods* - 590 So. 2d 429, 431 (Fla. 4th DCA) (Farmer, J., concurring specially), 589 So. 2d 294 (Fla. 1991) [called also defamation of DeClercks' name/person, and defamation and slander of title of property and slander of Title to real estate].

1

2

## Count 16. UNFAIR DEBT COLLECTION PRACTICES

3  3.104  Claimants' reaffirm and re-allege paragraphs above herein to as if specifically set

4       forth more fully herein below.

5
6  3.105  Claimants' on research, information and belief believes and thereupon alleges that
       the Defendants, and each of them, in taking the actions aforementioned, have
7
       violated provisions of:
8

9            Fair Debt Collection Practices Act, including but not limited to:
             Federal Debt Collection Act, 15 U.S.C. ;
10           Title 41, Subchap. V, §1692 et. seq.;
             Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§2601 – 2617.
11
12  3.106  Claimants' on research, information and belief believes and thereupon alleges

13       that one or more of the unfair debt collections practices referred to in the previous

       paragraph permits, under the law, one or more defenses or remedies, the specifies
14
       of which will be alleged by amendment to this Claim when ascertained.
15

16                              Count 17. USURY.

17  3.107  Claimants' reaffirm and re-allege paragraphs above herein as if specifically set

18       forth more fully herein below.

19
   3.108  Claimants' on research, information and belief believes and thereupon alleges that
20
       The real APR was not disclosed to Claimants'.
21

22  3.119  Claimants' on research, information and belief believes and thereupon alleges that

23       the interest charged was greater than state law permits.

24
   3.120  Claimants' on research, information and belief believes and thereupon alleges that
25
       in regard to usury, a loan to be used primarily for home improvement or home
26
       purchase is not regarded as a loan for personal, family or household purposes.
27
       With these loans and for any other loans which are not for personal, family or
28

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit
                              -56-

1  household purposes, the allowable rate is higher of 10% or 5% over the amount

2  charged by the Federal Reserve Bank of San Francisco on advances to member

3  banks on the 25th day of the month before the loan (if the agreement to loan and the

4  actual lending of the money are in different months, the 25th day of the month

5  before the earlier event is used).

6
7  3.121  Claimants' on research, information and belief believes and thereupon alleges

8  that the intentionally inflated appraisal lifted the APR far above any disclosed

9  or permissible limits on interest when amortized over the known and likely life of

10  the loan and no exemptions apply for "financial institutions" or other "licensed"

11  (e.g., pawnbroker lending organizations because the real source of the lien was in a

12  table-funded loan was not only lacking a bank charter or lending license, they

    were most probably not registered to do business in the state).

13
14  3.122  Claimants' on research, information and belief believes and thereupon alleges that

15  the pattern of cheating the state out of the revenues from registration and evading

16  the taxes and revenues to the state by not recording the alleged "assignments" of the

17  loans despite state law to the contrary, demonstrates that the constructive fraudulent

18  scheme of tricking borrowers into signing papers they would have signed if they were

19  aware of the true facts so that their identities could be stolen and used to sell

20  unregulated and constructively fraudulent securities, such that the state were victims

21  of the constructive fraud.

22  3.123  Claimants' on research, information and belief believes and thereupon alleges that

23  Countrywide Home Loans, if a loan was given, Countrywide Home Loans and its

24  successors requires that DeClercks' pay over three hundred (300%) percent interest

25  on top of the amount allegedly borrowed, which is usury.

26
27  3.124  Claimants' on research, information and belief believes and thereupon alleges that

28  Countrywide Home Loans, *arguendo*, that as a prerequisite to obtaining a loan,

1    borrower must accept paying the undisclosed amount of three hundred percent of the

2    original loan, which is 290 % over and above the amount 10% that Illinois sets as

3    a limit; and that a refusal to pay the rate, one would not be given a loan..

## Count 18. PREDATORY LENDING

3.125  Claimants' reaffirm and re-allege paragraphs above herein as if specifically set
forth more fully herein below.

3.126  Claimants' on research, information and belief believes and thereupon alleges that
assuming *arguendo,* that Respondents', and each of them, does have the right under
the law of negotiable instruments in this State, by endorsement, assignment, agency
or otherwise, to receive payment under a valid note, payment of which was secured
by the security instrument, and to initiate foreclosure under a power of sale contained
therein, if any, the Defendants, and each of them, is subject to defenses that would
have been available against the Initial Lender identified in the security instrument;
However in this case, none of the Respondents' have any right, title, interest or lien
in the property (Williams Amend. Affid., ¶ 7A).

3.127  Claimants' on research, information and belief believes and thereupon alleges that the
Initial purported Lender has engaged in predatory lending practices with respect to as
it knew that within a prescribed amount of time DeClercks' would default causing
purported lender to call for the payoff and acceleration, sale of the property, causing
Plaintiff to lose the property.

3.128  Claimants' on research, information and belief believes and thereupon alleges that
Claimants' will provide the specifics and will alleged by supplement or amendment
to this Claim when ascertained.

3.129  Claimants' on research, information and belief believes and thereupon alleges that

1    One or more of the predatory lending practices referred to in this previous paragraph

2    permits under the law, one or more defenses or remedies, the specifics of which will

3    be alleged by amendment of this Claim when ascertained.

4

## Count 18. FAIR CREDIT REPORTING ACT.

5

6    3.130 Claimants' reaffirm and re-allege paragraphs above herein as if specifically set forth
      more fully herein below.

7

8    3.131 Claimants' on research, information and belief believes and thereupon alleges that at

9    all times material, Defendants qualified as a provider of information to the Credit

10   Reporting Agencies, including but not limited to Experian, Equifax, and TransUnion,

11   under the Federal Fair Credit Reporting Act. Defendants wrongfully, improperly,

12   and illegally reported negative information as to the Claimants' to one or more Credit

13   Reporting Agencies, resulting in negative reports in Claimants' credit reports and the

14   lowering of their credit and FICO scores.

15

16   3.132 Claimants' on research, information and belief believes and thereupon alleges that

17   each of the defendant singularly or together, falsely reported to credit reporting

18   agencies that Claimants' credit was bad because of the failure to pay a loan that was

19   never received prior to the signing of the Note and Deed of Trust/Mortgage

20   instruments.

21   3.133 Claimants' on research, information and belief believes and thereupon alleges that

22   Pursuant to16 U.S.C. §1681(a)(2)(b), Claimants' are entitled to maintain a private

23   cause of action against Defendants for an award of damages in an amount to be

24   proven at the time of all violations of the Fair Credit Reporting Act which caused

25   actual damages to Claimants', including emotional distress and humiliation.

26

27   3.134 Claimants' on research, information and belief believes and thereupon alleges that
      Claimants' are entitled to recover damages from Defendants for negligent non-

28

George DeClerck & Bobbie DeClercks Federal Wrongful Foreclosure Suit
-59-

1    compliance with the Fair Credit Reporting pursuant to 15 U.S.C. §1681(o).

2
3.135  Claimants' on research, information and belief believes and thereupon alleges that
3        Claimants' are also entitled to recover damages from Defendants for the willful non-
4        compliance with the Fair Credit Reporting pursuant to 15 U.S.C. §1681(n)(a)(2) in
5        an amount to be proven at time of trial, or in the alternative, to the highest verdicts.
6

7                    **Count 19. WRONGFUL FORECLOSURE**

8
3.136  Claimants' reaffirm and re-allege paragraphs above herein as if specifically set forth
9        more fully here below.
10

11   3.137  Claimants' on research, information and belief believes and thereupon alleges that
12        Defendants, and each of them, if a loan was given, they failed to comply to give such
13        notices as required bylaw, e.g., all notices of default and or trustee sales and such
14        other recordings and actions are void as a matter of law, and according to Expert
15        Patrick F. Williams declaration (Exhibit 2).

16
3.138  Claimants' on research, information and belief believes and thereupon alleges that
17        Defendants, and each of them, failed to offer Claimants' loan modification or
18        workout plan that would exceed the anticipated recovery through foreclosure on a net
19        present value basis, if a loan can be proven to have been given prior to signing the
20        Note and Deed of Trust/Mortgage, which means the sale is going to be constructively
21        fraudulent and in fact wrongful foreclosure. See Perata Bill SB 1137 a new California
22        Law.
23

24   3.139  Claimants' on research, information and belief believes and thereupon alleges that
25        said Trustee sale and trustee's deed will be a constructive fraudulent sale and if the
26        property is sold, the deed must therefore be set aside if the events happen prior to
27        completion of this action.

28

## 4. Relief.

4.1   WHEREFORE, Claimants' requires judgment against defendants and each of them in their individual, corporate, several and joint capacities, as follows:

a) For an order compelling said Defendants, and each of them, to transfer legal and equitable marketable titles and possession of the subject property and real estate to Claimants' herein.

b) For a declaration and determination that Claimants' are the rightful owners of estate, title, and sole interested party to the property and real estate and that Defendants and any heirs, successors and assigns and each of them, be declared to have no estate, right, title or interest in said property or real estate.

c) For an injunction forever barring and prohibiting said Defendants, and each of them and their principal(s), heir(s), successor(s), third party affiliate(s), and agent(s) from claiming or asserting any estate, right, title or lien in said property or real estate now and in the future prohibiting each of them from publishing Notices of Default, Notice of Sale, Assignments, or commencing suit against Claimants' or the property at issue;

d) For costs of suit herein incurred;

e) For attorney's fees and/or like attorney/counsel fees;

f) Terminate, make void, set aside any trustee sale that may occur if said sale occurs within the pendency of any final determinations required herein;

g) General monetary damages which is the amount of the note at maturity including interest specified in Note at maturity, including treble damages; return of any deposit denominated as currency, including all money given to

any person calling themselves a lender, broker, assignee, heir, agent.

h) Damages for emotional distress: 5 million dollars, or alternatively, according to the highest verdicts.

i) Punitive damages of Five million dollars or alternatively according to the highest verdicts.

k) Exemplary damages of Five Million dollars, or alternatively, according to the highest verdicts.

l) Special damages of 2.5 Million dollars, or alternatively, according to the highest verdicts.

m) Expungement of false records from county recorder.

n) Any other supplemental relief in addition to the items required and set forth above.

### 5. Verification

5.1     I, me, George and Bobbie, declare under penalty of perjury that the above is true, correct and not misleading, and as to those items declared under belief I believe them to be true. I am over 18 years old and competent to testify as to the above matters, and if asked I shall do so.

This 25 day of November A.D. 2014.

Bobbie DeClerck, and

George DeClerck.

**Annexations:**

Exhibit 1: Foreclosure Defense Programs, *Mortgage Loan Audit and Mortgage Backed Security Analysis (June 23, 2014),*

Exhibit 2: Amended Declaration of Patrick F. Williams,

Exhibit 3: Deconstructing the Black Magic of Securitized Trusts,

Exhibit 4: CFPB Examination Procedures,

Exhibit 5: MELS Study,

Exhibit 6: Abuse of the Legal System: Debt deception,

Exhibit 7: Grant Deed.